# WILSON *v.* SHAW, SECRETARY OF THE TREASURY.

## APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 43.   Argued October 19, 1906.—Decided January 7, 1907.

Where the bill is solely to restrain the Secretary of the Treasury from pay-
ing specific sums to a specific party this court may take judicial notice
of the fact that such payments have actually been made and in that
event whether rightfully made or not is a moot question.

While the courts may protect a citizen against wrongful acts of the Gov-
ernment affecting him or his property, the remedy is not necessarily
by injunction, suit for which is an equitable proceeding, in which the
interests of the defendant as well as those of the plaintiff will be con-
sidered.

Subsequent ratification is equivalent to original authority; and where
Congress authorizes the acquisition of territory in a specific manner
from a specific party, and it is otherwise acquired, the subsequent action
of Congress in enacting laws for the acquired territory amounts to a full
ratification of the acquisition, and the action of the Executive in regard
thereto; and the concurrent action of Congress and the Executive in this
respect is conclusive upon the courts.

The courts have no supervising control over the political branch of the
Government in its action within the limits of the Constitution.

The title of the United States to the Canal Zone in Panama is not imper-
fect either because the treaty with Panama does not contain technical
terms used in ordinary conveyances of real estate or because the bound-
aries are not sufficient for identification, the ceded territory having been
practically identified by the concurrent action of the two interested
nations.

Under the commerce clause of the Constitution, Congress has power to
create interstate highways, including canals, and also those wholly within
the Territories and outside of state lines.

The previous declarations of this court upholding the power of Congress to
construct interstate or territorial highways are not *obiter dicta;* and to
announce a different doctrine would amount to overruling decisions on
which rest a vast volume of rights and in reliance on which Congress has
acted in many ways.

25 App. D. C. 510, affirmed.

In a general way it may be said that this is a suit brought
in the Supreme Court of the District of Columbia by the ap-
pellant, alleging himself to be a citizen of Illinois and the
owner of property subject to taxation by the United States,

to restrain the Secretary of the Treasury from paying out money in the purchase of property for the construction of a canal at Panama, from borrowing money on the credit of the United States, from issuing bonds or making any payments under the act of Congress, June 28, 1902, 32 Stat. 481, providing for the acquisition of property and rights- from Colombia and the canal company and the construction and operation of the canal and the Panama Railroad. The Republic of Panama and the New Panama Canal Company of France were named parties defendant, but they were not served with process and made no appearance. A demurrer to the bill was sustained, and the bill dismissed. This decree was affirmed by the Court of Appeals, from whose decision this appeal was taken.

*Mr. Warren B. Wilson,* appellant, *pro se:* .

The doctrine is fully established that in proper cases, compulsory process, both mandamus and injunction, may be issued by the courts at the suit of private persons interested, to require such officials to do or refrain from doing, in their official capacity, things which the court can see it is their positive legal duty to do or not to do. *Marbury* v. *Madison,* 1 Cr. 137; *Kendall* v. *United States,* 12 Pet. 524; *United States* v. *Schurz,* 102 U. S. 378; *United States* v. *Black,* 128 U. S. 40; *United States* v. *Bayard,* 4 Mackey, 312; *Noble* v. *U. R. L. R. R. Co.,* 147 U. S. 165.

That a bill to restrain an unlawful disbursement of public funds or issue of public obligations is a proper case, and a private citizen has the necessary special interest to enable him to sustain such a bill as the present, is also clear. *Crampton* v. *Zabriskie,* 101 U. S. 601; Dillon on Mun. Corp., §§ 914–923; *Louisiana Board* v. *McComb,* 92 U. S. 531; *Rippe* v. *Becker,* 56 Minnesota, 100; *Pennoyer* v. *McConnaugh,* 140 U. S. 1; *Burke* v. *Snively,* 208 Illinois, 320; *The Liberty Bell,* 23 Fed. Rep. 831.

The suit is not a suit against the United States.

The cases already cited and the practically uniform course

of authority, establish that suits of this character to restrain public officials from misapplying public money are not open to this or any other objection. The State, or the United States, as the case may be, has an interest in the question whether the funds in the treasury shall be preserved for lawful uses or wasted in unlawful uses, and in a similar case a private corporation would be made defendant.

But the legal impossibility of making the State or United States a party in such cases does away with the necessity and a decree may be had against the official. *Osborn* v. *Bank of U. S.,* 9 Wheat. 738; *Davis* v. *Gray,* 16 Wall. 203; *Dodge* v. *Woolsey,* 18 How. 331; *Allen* v. *B. & O. R. R. Co.,* 114 U. S. 311; *Virginia Coupon cases,* 114 U. S. 269; *United States* v. *Lee,* 106 U. S. 196, 212–215; *Tindal* v. *Wesley,* 167 U. S. 204.

The thing sought to be prevented here is exactly of the kind that has been constantly controlled, namely, an unlawful expenditure of the public money, and issue of public bonds not in exercising administrative discretion, and not in government at all, but in an unauthorized business venture. A case involving that question is one of private right, as to which the courts should and do give judgment, and not a political one, upon which they do not pass. *Crampton* v. *Zabriskie,* 101 U. S. 601; Dillon on Mun. Corp., §§ 914–924; *Rippe* v. *Becker,* 56 Minnesota, 100; *Burke* v. *Snively,* 208 Illinois, 328.

The treaty with Panama is not a performance of the conditions of the act of Congress because: Whatever has been acquired has not been acquired in the way required by the statute, *i. e.,* not by treaty from Colombia. And the things required to be acquired by treaty from Colombia have not been acquired at all, either from Colombia or Panama. It is not a compliance, because what was acquired was not acquired by treaty from Colombia. The statute in terms, requires the property and rights described to be obtained by treaty from the Republic of Colombia; and in that event, the other conditions being met, purports to authorize a payment to the Republic of Colombia.

It is not a compliance with the terms used, that these rights

and privileges shall have been obtained by force from the Republic of Colombia, or by treaty or otherwise from anyone else; nor does this act in terms authorize under any conditions the payment of any money to the Republic of Panama.

The treaty with Panama is not a compliance with the conditions precedent set out in the act, because the things required to be acquired from Colombia have not been acquired at all from Colombia or Panama. The boundaries of the strip supposed to be conveyed by the treaty with Panama, are not defined in that treaty, nor are any means afforded by which they can be defined. The grant is, therefore, void for uncertainty.

This condition precedent has, further, not been complied with, because the President has not acquired, for and on behalf of the United States the perpetual control of a strip of land six miles wide, including jurisdiction to make police and sanitary laws, and establish judicial tribunals to enforce them.

Congress has under the Constitution no authority to employ the public funds arising from all sources, including taxes, imposts and duties, laid and collected, money borrowed on the credit of the United States, and the proceeds of the disposition of the territory and other property of the United States, in making or buying and operating commercial canals and railroads and conducting like enterprises, in foreign countries.

This measure can derive no support from the power to regulate commerce among the several States, with foreign States and with the Indian tribes.

The power is to regulate, not to carry on, commerce. The power to regulate commerce is the power to prescribe the rule according to which it shall be carried on or governed. *Gibbons* v. *Ogden*, 9 Wheat. 1; *Cooley* v. *Port Wardens*, 12 How. 299; *Welton* v. *Missouri*, 91 U. S. 279; *Tiernan* v. *Rinker*, 102 U. S. 123; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Interstate Comm. Comm.* v. *Brimson*, 154 U. S. 447; *E. C. Knight Co.* v. *United States*, 156 U. S. 1; *Addyston Pipe &c. Co.* v. *United States*, 175 U. S. 211; *Northern Securities Co.* v. *United States*, 193 U. S. 197.

The power is to regulate not to carry on commerce, and the power to carry on commerce cannot be implied from the power to regulate it.

The term " implied powers " in general use, is unfortunate and inaccurate. The better term is that used in *Gibbons* v. *Ogden,* "included," or "comprehended powers."

A grant of powers to do one thing implies no power to do anything else. It includes a full choice of means, but the thing proposed to be done must always be the particular thing authorized; thus, navigation is commerce. Consequently Congress may regulate navigation, "because in regulating navigation, it is regulating commerce." *Gibbons* v. *Ogden,* 9 Wheat. 1.

The measure can derive no support from the power to establish postoffices and post-roads. It is not even attempted by this statute to establish this canal as a post-road. The general statute, making all canals post-roads while the mail is carried on them, means all canals in the United States.

The measure can derive no support from the power to declare war, which, as construed in *McCullough* v. *Maryland,* 4 Wheat. 407 and *Miller* v. *United States,* 11 Wall. 268, means the power to declare and carry on war. That means the whole power of the United States—both the power of the President and Congress.

The power is to carry on war, not to carry on commerce. This is commerce; transportation is commerce. *Gibbons* v. *Ogden,* 9 Wheat. 1; *Joint Traffic Assn.* v. *United States,* 171 U. S. 515.

The measure can derive no support from the provision that "Congress shall have power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States."

*Mr. Assistant Attorney General Russell, Mr. Glenn E. Husted* and *The Solicitor General* for appellee:

Complainant is without right to sue.

There is no averment that he pays to the United States any

taxes whatever. But if he is a taxpayer, he is not entitled to bring such a suit unless he shows some direct and special injury to himself above that suffered by others. *Grant* v. *Cooke,* 7 D. C. Rep. 166; *State* v. *Thorson* (S. D.), 33 L. R. A. 584; 1 Beach, Mod. Eq. Juris., §§ 641, 642; 1 High on Injunction, § 9; *Georgetown* v. *Alex. Canal Co.,* 12 Pet. 91, 99.

The payments sought to be enjoined having been made and thirty million dollars in bonds issued, of which the court will take judicial notice, this attempt to restrain payment is largely a moot question, which the court will not consider. *Mills* v. *Green,* 159 U. S. 651; *Am. Book Co.* v. *Kansas,* 193 U. S. 49, 52; *Cheong Ah Moy* v. *United States,* 113 U. S. 216.

Title to the canal strip having been acquired, this suit in effect seeks to restrain the Government from improving its property. The United States is therefore a necessary party. It has not consented to be sued and cannot be sued without its consent. *Belknap* v. *Schild,* 161 U. S. 10; *International Supply Company* v. *Bruce,* 194 U. S. 601; *Oregon* v. *Hitchcock,* 202 U. S. 60.

That this court will not attempt to enjoin the enforcement by the Executive of a statute simply because it is alleged to be unconstitutional is too well established to call for argument. *Mississippi* v. *Johnson,* 4 Wall. 475; *Sutherland* v. *The Governor,* 29 Michigan, 320, 329; *Georgia* v. *Stanton,* 6 Wall. 50; *Decatur* v. *Spaulding,* 14 Pet. 497, 515.

The treaty with the Republic of Panama complies with the Spooner Act, if such compliance is necessary. This court has frequently affirmed the principle that statutes should be given a reasonable construction and application. *United States* v. *Kirby,* 7 Wall. 482, 486–487; *Blake* v. *National Bank,* 23 Wall. 309, 320; *Lau Ow Bew* v. *United States,* 144 U. S. 47, 59; *In re Chapman,* 166 U. S. 661, 667; *Bate Ref. Co.* v. *Sulzberger,* 157 U. S. 1, 37; *Collins* v. *New Hampshire,* 171 U. S. 30, 34; *Knowlton* v. *Moore,* 178 U. S. 41, 77; *Interstate Comm. Comm.* v. *Baird,* 194 U. S. 38.

The Spooner Act, the treaty with Panama, and the construc-

tion of the canal are not unconstitutional. *Monongahela Nav. Co.* v. *United States*, 148 U. S. 312, 334; *California* v. *Central Pac. Co.*, 127 U. S. 1; *Luxton* v. *North River Bridge Co.*, 153 U. S. 525, 530; *Gilman* v. *Philadelphia*, 3 Wall. 713.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

If the bill was only to restrain the Secretary of the Treasury from paying the specific sums named therein, to wit, $40,000,000, to the Panama Canal Company, and $10,000,000 to the Republic of Panama, it would be sufficient to note the fact, of which we may take judicial notice, that those payments have been made and that whether they were rightfully made or not is, so far as this suit is concerned, a moot question. *Cheong Ah Moy* v. *United States*, 113 U. S. 216; *Mills* v. *Green*, 159 U. S. 651; *American Book Company* v. *Kansas*, 193 U. S. 49; *Jones* v. *Montague*, 194 U. S. 147.

But the bill goes further and seeks to restrain the Secretary from paying out money for the construction of the canal, from borrowing money for that purpose and issuing bonds of the United States therefor. In other words, the plaintiff invokes the aid of the courts to stop the Government of the United States from carrying into execution its declared purpose of constructing the Panama Canal. The magnitude of the plaintiff's demand is somewhat startling. The construction of a canal between the Atlantic and Pacific somewhere across the narrow strip of land which unites the two continents of America has engaged the attention not only of the United States but of other countries for many years. Two routes, the Nicaragua and the Panama, have been the special objects of consideration. A company chartered under the laws of France undertook the construction of a canal at Panama. This was done under the superintendence and guidance of the famous Ferdinand de Lesseps, to whom the world owes the Suez Canal. To tell the story of all that was done in respect

to the construction of this canal, prior to the active intervention of the United States, would take volumes. It is enough to say that the efforts of De Lesseps failed. Since then Panama has seceded from the Republic of Colombia and established a new republic which has been recognized by other nations. This new republic has by treaty granted to the United States rights, territorial and otherwise. Acts of Congress have been passed providing for the construction of a canal, and in many ways the executive and legislative departments of the Government have committed the United States to this work, and it is now progressing. For the courts to interfere and at the instance of a citizen, who does not disclose the amount of his interest, stay the work of construction by stopping the payment of money from the Treasury of the United States therefor, would be an exercise of judicial power which, to say the least, is novel and extraordinary.

Many objections may be raised to the bill. Among them are these: Does plaintiff show sufficient pecuniary interest in the subject matter? Is not the suit really one against the Government, which has not consented to be sued? Is it any more than an appeal to the courts for the exercise of governmental powers which belong exclusively to Congress? We do not stop to consider these or kindred objections; yet, passing them in silence must not be taken as even an implied ruling against their sufficiency. We prefer to rest our decision on the general scope of the bill.

Clearly there is no merit in plaintiff's contentions. That, generally speaking, a citizen may be protected against wrongful acts of the Government affecting him or his property may be conceded. That his remedy is by injunction does not follow. A suit for an injunction is an equitable proceeding, and the interests of the defendant are to be considered as well as those of the plaintiff. Ordinarily it will not be granted when there is adequate protection at law. In the case at bar it is clear not only that plaintiff is not entitled to an injunction, but also that he presents no ground for any relief.

He contends that whatever title the Government has was not acquired as provided in the act of June 28, 1902, by treaty with the Republic of Colombia. A short but sufficient answer is that subsequent ratification is equivalent to original authority. The title to what may be called the Isthmian or Canal Zone, which at the date of the act was in the Republic of Colombia, passed by an act of secession to the newly formed Republic of Panama. The latter was recognized as a nation by the President. A treaty with it, ceding the Canal Zone, was duly ratified. 33 Stat. 2234. Congress has passed several acts based upon the title of the United States, among them one to provide a temporary government, 33 Stat. 429; another, fixing the status of merchandise coming into the United States from the Canal Zone, 33 Stat. 843; another, prescribing the type of canal, 34 Stat. 611. These show a full ratification by Congress of what has been done by the Executive. Their concurrent action is conclusive upon the courts. We have no supervising control over the political branch of the Government in its action within the limits of the Constitution. *Jones v. United States,* 137 U. S. 202, and cases cited in the opinion; *In re Cooper,* 143 U. S. 472, 499, 503.

It is too late in the history of the United States to question the right of acquiring territory by treaty. Other objections are made to the validity of the right and title obtained from Panama by the treaty, but we find nothing in them deserving special notice.

Another contention, in support of which plaintiff has presented a voluminous argument, is that the United States has no power to engage in the work of digging this canal. His first proposition is that the Canal Zone is no part of the territory of the United States, and that, therefore, the Government is powerless to do anything of the kind therein. Article 2 of the treaty, heretofore referred to, "grants to the United States in perpetuity the use, occupation and control of a zone of land and land under water for the construction, maintenance, operation, sanitation and protection of said

canal." By article 3, Panama "grants to the United States all the rights, power and authority within the zone mentioned and described in article 2 of this agreement, . . . which the United States would possess and exercise if it were the sovereign of the territory within which said lands and waters are located, to the entire exclusion of the exercise by the Republic of Panama of any such sovereign rights, power or authority."

Other provisions of the treaty add to the grants named in these two articles further guaranties of exclusive rights of the United States in the construction and maintenance of this canal. It is hypercritical to contend that the title of the United States is imperfect, and that the territory described does not belong to this Nation, because of the omission of some of the technical terms used in ordinary conveyances of real estate.

Further, it is said that the boundaries of the zone are not described in the treaty; but the description is sufficient for identification, and it has been practically identified by the concurrent action of the two nations alone interested in the matter. The fact that there may possibly be in the future some dispute as to the exact boundary on either side is immaterial. Such disputes not infrequently attend conveyances of real estate or cessions of territory. Alaska was ceded to us forty years ago, but the boundary between it and the English possessions east was not settled until within the last two or three years. Yet no one ever doubted the title of this republic to Alaska.

Again, plaintiff contends that the Government has no power to engage anywhere in the work of constructing a railroad or canal. The decisions of this court are adverse to this contention. In *California* v. *Pacific Railroad Company*, 127 U. S. 1, 39, it was said:

"It cannot at the present day be doubted that Congress, under the power to regulate commerce among the several States, as well as to provide for postal accommodations and

military exigencies, had authority to pass these laws. The power to construct, or to authorize individuals or corporations to construct, national highways and bridges from State to State, is essential to the complete control and regulation of interstate commerce. Without authority in Congress to establish and maintain such highways and bridges, it would be without authority to regulate one of the most important adjuncts of commerce. This power in former times was exerted to a very limited extent, the Cumberland or National road being the most notable instance. Its exertion was but little called for, as commerce was then mostly conducted by water, and many of our statesmen entertained doubts as to the existence of the power to establish ways of communication by land. But since, in consequence of the expansion of the country, the multiplication of its products, and the invention of railroads and locomotion by steam, land transportation has so vastly increased, a sounder consideration of the subject has prevailed and led to the conclusion that Congress has plenary power over the whole subject. Of course the authority of Congress over the Territories of the United States, and its power to grant franchises exercisable therein, are, and ever have been, undoubted. But the wider power was very freely exercised, and much to the general satisfaction, in the creation of the vast system of railroads connecting the East with the Pacific, traversing States as well as Territories, and employing the agency of state as well as Federal corporations. See *Pacific Railroad Removal cases*, 115 U. S. 1, 14, 18."

In *Luxton* v. *North River Bridge Company*, 153 U. S. 525, 529, Mr. Justice Gray, speaking for the court, said:

"Congress, therefore, may create corporations as appropriate means of executing the powers of government, as, for instance, a bank for the purpose of carrying on the fiscal operations of the United States, or a railroad corporation for the purpose of promoting commerce among the States. *McCulloch* v. *Maryland*, 4 Wheat. 316, 411, 422; *Osborn* v. *Bank of United States*, 9 Wheat. 738, 861, 873; *Pacific Railroad Removal cases*,

115 U. S. 1, 18; *California* v. *Pacific Railroad,* 127 U. S. 1, 39. Congress has likewise the power, exercised early in this century by successive acts in the Cumberland or National road, from the Potomac across the Alleghanies to the Ohio, to authorize the construction of a public highway connecting several States. See *Indiana* v. *United States,* 148 U. S. 148."

See also *Monongahela Navigation Company* v. *United States,* 148 U. S. 312.

These authorities recognize the power of Congress to construct interstate highways. *A fortiori,* Congress would have like power within the Territories and outside of state lines, for there the legislative power of Congress is limited only by the provisions of the Constitution, and cannot conflict with the reserved power of the States. Plaintiff, recognizing the force of these decisions, seeks to obviate it by saying, that the expressions were *obiter dicta,* but plainly they were not. They announce distinctly the opinion of this court on the questions presented, and would have to be overruled if a different doctrine were now announced. Congress has acted in reliance upon these decisions in many ways, and any change would disturb a vast volume of rights supposed to be fixed; but we see no reason to doubt the conclusions expressed in those opinions, and adhere to them. The Court of Appeals was right, and its decision is

*Affirmed.*