# B. F. CUMMINS COMPANY *v.* BURLESON.

POSTMASTER GENERAL; OFFICERS; INJUNCTION; PUBLIC POLICY.

1. The awarding by the Postmaster General after careful investigation and report by a committee of experts, of contracts to certain successful bidders for the furnishing of canceling machines, under a statute requiring the contract to be awarded "on the basis of cheapness and efficiency," involves the ascertainment of facts and the exercise of discretion, and is not a mere or plain ministerial duty, and therefore cannot be restrained by injunction.

2. While a taxpayer of a municipality may maintain a bill against the municipal authorities to prevent the latter from illegally disposing of public moneys, or creating a debt which the taxpayer will be compelled to pay (citing *Roberts* v. *Bradfield,* 12 App. D. C. 453), public policy forbids the extension of this rule, so as to permit a taxpayer having no special right of person or property not common to the public generally to maintain a similar bill against the executive head of a department of the State or Federal government.

No. 2551. Submitted May 15, 1913. Decided May 26, 1913.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia sitting in equity, sustaining a demurrer to and dismissing an amended bill filed to enjoin defendant from entering into any contracts carrying out certain awards, and canceling them.    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal by the B. F. Cummins Company from a decree dismissing a bill against Albert S. Burleson, the Postmaster General, filed March 25, 1913, by the B. F. Cummins Company, a corporation of the State of Illinois. It alleges the following facts substantially: An act of Congress approved August 24, 1912, making appropriations for the Postoffice Department for the year ending June 30, 1913, appropriated money for the rental and purchase of canceling machines, cost of power, repairs, etc., and contained a proviso that no contract shall be made for any machine, including repairs, for more than $270 per annum, "and that all contracts shall be let after having advertised for bids, and shall be awarded on the basis of cheapness and efficiency." By a later act, June 30, 1912, the Postmaster General was authorized, at his discretion, to enter into contracts for a period of not exceeding four years. Bids were advertised for, and as a result several sealed proposals were submitted by bidders. These embraced bids for lots of ten, and for multiples thereof up to the entire number proposed to be rented; the offers decreasing in price per machine in proportion to the numbers offered. Among these bids was one by the B. F. Cummins Company. After the opening of said bids, the then Postmaster General, Frank H. Hitchcock, appointed a committee consisting of two assistant Postmasters General, the chief postoffice inspector, and the postmaster of the city of New York, to examine and report upon the same. The tests conducted by them were to be the sole criterion in determining the efficiency of the machines submitted. In accordance with the report of said committee, awards were made as follows:

First Class—High Grade.
Universal Stamping Machine Co...200 machines at $220 ea.
American Postal Machines Co..... 50 machines at  200 ea.
International Postal Sup. Co., N. Y..207 machines at  270 ea.

Second Class—Medium Grade.
Universal Stamping Machine Co... 60 machines at $136 ea.
American  Postal  Machines  Co.
  Combination ................400 machines at   80 ea.
Columbia Postal Supply Co.......305 machines at   95 ea.
International Postal Supply Co. of
  New York, Model S. ..........105 machines at  150 ea.

Third Class—Hand Power.
American  Postal  Machines  Co.
  No. 1 .....................400 machines at  $62 ea.
Columbia Postal Supply Co.......100 machines at   50 ea.
International Postal Sup. Co. of
  New York, Model "L" H. P.....100 machines at   60 ea.
American  Postal  Machines  Co.
  No. 2 .................:.......... 50 machines at   54 ea.

That the bids accepted were not accepted on the awards made
on the basis of cheapness and efficiency. That complainant's
bids were cheaper, more economical, and more advantageous
than those accepted, and there will be a loss on the same ap-
proximating $409,000 for the four years, and said amount will
be unnecessarily expended. That, on a basis of cheapness and
efficiency, the awarding of contracts to the other unsuccessful
bidders would result in great saving to the United States. That
"one of the machines for which an award was made in each class
was cheaper than either of the other machines for which awards
were made in that class, and said one machine was equally ef-
ficient as said other machines," so that there will result a great
loss to the United States.

That the bidders to whom awards were made offered their
machines at a rental on a basis of award for the entire number

of machines in any one of the classes, much lower than on a basis for a less number, yet the Postmaster General arbitrarily accepted several bids, and made several awards in each of the classes, at higher prices and without any increase of efficiency; and if said awards are executed, there will result an unnecessary expenditure of public money. Other allegations are substantially the same in different forms.

Plaintiff has attached as an exhibit to its bill the proceedings in the Postoffice Department, beginning with the advertisement and ending with the award. The report of the committee itemizes the bids made, and describes the tests made of the several machines of the respective bidders by expert machinists, and states as follows: "After having fully and carefully considered all the bids received for rentals for this class, the results of the tests, and the report of the mechanical experts, we are of the opinion that awards should be made as follows:" The report also states: "The total annual rental price of 1882 machines of these three classes now in the service is $278,794; the total annual rental price of 1977 machines of these three classes, as recommended by the committee, will be $244,275, a saving of $45,519 a year, with an increase of 95 in the number of machines and a substantial increase in the efficiency of all machines to be used. These recommendations are based upon considerations of cheapness and efficiency."

Having considered the foregoing report, Postmaster General Hitchcock, on February 21, 1913, awarded bids as recommended by the committee. A protest was made by the plaintiff to Albert S. Burleson, successor to Mr. Hitchcock, as Postmaster General, who replied that the matter had been closed by the former's approval of the award.

It is finally alleged that great and irreparable injury will result to plaintiff and other taxpayers of the United States if the moneys be expended as threatened, and if the canceling machines be not secured on the basis of cheapness and efficiency as required by law, etc. The special right of plaintiff to maintain the suit is contained in the 12th paragraph of the bill, as follows:

"Twelfth. That complainant is a taxpayer of the United States and has paid and does regularly pay and will continue hereafter to pay to the United States an annual corporation tax based upon its income, under the act of Congress of August 5, 1909, and has paid and does pay and will continue hereafter to pay to the United States tariff taxes upon many articles by it imported into the United States, and also has paid and does pay and will hereafter continue to pay other taxes of the United States; and complainant further avers that there will be to it special damage and injury from the unnecessary and illegal expenditure by government officials of the moneys of the United States as threatened in the carrying out of said awards as above set out, which expenditures will render the taxes of the United States higher and a greater burden upon taxpayers of the United States than said taxes otherwise would be, and will increase the taxes of the complainant and other taxpayers of the United States."

The prayers are for a decree enjoining the defendant from entering into any contracts carrying out said awards, and canceling them. Defendant's demurrer to the bill was sustained, and the same dismissed.

*Mr. Charles A. Douglas, Mr. Gibbs L. Baker, Mr. Thomas Ruffin,* and *Mr. Hugh H. O'Bear,* for the appellant.

1. This court has jurisdiction over the executive officers of the general government and may issue injunctions against said officers, and taxpayers may maintain such suits to prevent illegal expenditures of public funds. *Railroad* v. *Noble,* 20 D. C. 555; *Noble* v. *R. Co.* 147 U. S. 164; *American Sch. Magnetic Healing* v. *McAnnulty,* 187 U. S. 94; *Roberts* v. *Valentine,* 13 App. D. C. 38; *Roberts* v. *Bradfield,* 12 App. D. C. 453; *Roberts* v. *United States,* 176 U. S. 221; *United States* v. *Lee,* 106 U. S. 196; *Cunningham* v. *Macon, &c. R. R. Co.* 109 U. S. 446; *Payne* v. *Railway Pub. Co.* 20 App. D. C. 581; *Downing* v. *Ross,* 1 App. D. C. 251; *Detroit Free Press* v. *State Auditors,* 47 Mich. 135; *Reagan* v. *Trust Co.* 154 U. S. 362; *Liquidation*

v. *McComb,* 92 U. S. 531; *Crampton* v. *Zabriskie,* 101 U. S.. 601; *State* v. *Baxter,* 38 Ark. 462; *Harney* v. *Railroad R. Co.* 32 Ind. 244; *Henry County* v. *Gillies,* 138 Ind. 667; *Rice* v.. *Smith,* 9 Iowa, 571; *Snyder* v. *Foster,* 77 Iowa, 638; *Peter* v.. *Prettyman,* 62 Md. 566; *Ackerman* v. *Trummel,* 40 Neb. 95;. *Normand* v. *Otoe County,* 8 Neb. 18; *Whitcomb* v. *Reed,* 24 Neb. 50; *Vaughn* v. *Comrs.* 118 N. C. 636; *Shinn* v. *Bd. of* *Edu.* 39 W. Va. 497; *Times Pub. Co.* v. *Everett,* 9 Wash. 518; *Baltimore* v. *Keyser,* 72 Md. 106; *Colorado Pav. Co.* v. *Murphy,*. 78 Fed. 28; *New Orleans, M. & C. R. Co.* v. *Dunn,* 51 Ala. 128.

2. A suitor who comes into court with an established right, as here in the character of a taxpayer, will not be denied his proper remedy because of some ulterior interest or motive which· he may have in bringing the suit. *Starin* v. *Mayor,* 42 Hun, 551; *Brookman* v. *Creston,* 79 Iowa, 592; *Colman* v. *Collins,* 40 Ga. 607, 8, 16, 17; *Ramsey* v. *Gould,* 57 Barb. 398; *Mazet* v. *Pittsbury,* 137 Pa. 548; *Baltimore* v. *Keyser,* 72 Md. 106; *Lucas* v. *Engineering, etc. Co.* 16 Hawaii, 80; *Times Pub. Co.* v. *Everett,* 9 Wash. 518, and *Henry County* v. *Gillies,* 138 Ind. 667.

*Mr. Clarence R. Wilson,* United States District Attorney,. and *Mr. Reginald S. Huidekoper,* Assistant, for the appellee:·

1. The appellant as a taxpayer has no status to entitle it to· an injunction against an executive officer of the government in the performance of his official duty. *Jones* v. *Reed,* 3 Wash. 57; Dill. Mun. Corp. 4th ed. No. 915; High, Injunction, No. 1237; *Adair* v. *Browning,* 6 D. C. 243; *Bradfield* v. *Roberts,* 175 U. S. 291; *Re Sawyer,* 124 U. S. 200; *State* v. *Thorson,*. 33 L.R.A. 584, 9 S. Dak. 149; *Syme* v. *Poole,* 36 W. L. R. 18; *State ex rel. Taylor* v. *Lord,* 28 Or. 491; *Miller* v. *Grandy,* 13 Mich. 540; *Grant* v. *Cook,* 7 D. C. 165, 203; *Harrison* v. *Black,* 31 App. D. C. 417; *Valley Paper Co.* v. *Donnelly, Public·* *Printer,* Equity No. 29,461; *Peeples* v. *Byrd,* 98 Ga. 688; *Roosevelt* v. *Draper,* 23 N. Y. 318; *Cicero Lumber Co.* v. *Cicero,* 176 Ill. 9; *Barrow* v. *Sycamore,* 150 Ill. 588.

2. The determination of the question of the best canceling··

machines for the use of the postoffice department, upon the basis of cheapness and efficiency, is vested in the Postmaster General, and his decision thereon is final and conclusive, and should not be reviewed by the courts. *Cleveland Fire Co.* v. *Metropolitan Fire Commissioners,* 55 Barb. N. Y. 288, 292; *Clapton* v. *Taylor,* 49 Mo. App. 117–124; *Interstate Product Co.* v. *Philadelphia,* 164 Pa. 477; *Douglas* v. *Com.* 108 Pa. 559; *Maxwell* v. *Bastrot Mfg. Co.* 77 Tex. 233; *Missouri Drug Co.* v. *Wyman,* 129 Fed. 623; *American School of Magnetic Healing* v. *McAnnulty,* 187 U. S. 94; *United States ex rel. Riverside Oil Co.* v. *Hitchcock,* 190 U. S. 316–324; *United States ex rel. West* v. *Hitchcock,* 26 App. D. C. 290; *Northern P. R. Co.* v. *Washington Territory,* 142 U. S. 492; *Decatur* v. *Paulding,* 14 Pet. 513; *Bates & Guild Co.* v. *Paine,* 194 U. S. 106; *Enterprise Asso.* v. *Zumstein,* 67 Fed. 1000.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. Nothing can be plainer than that the provision of the appropriation act requiring the Postmaster General to award the bids for the authorized canceling machines on the "basis of cheapness and efficiency" involved the exercise of his discretion. The machines were intended for constant and arduous use in the postoffices of the country; and cheapness did not depend so much upon mere cost price of a machine as upon its efficiency, of which strength, capacity, and durability are important elements. An examination was ordered of the several elements of the required basis through a committee of practical experts familiar with the needs and uses of the service. This committee caused complete tests to be made by expert machinists, and noted the results. The report submitted by the committee comprised about sixty pages of closely printed matter, containing an analysis of the several bids, the explanations of bidders, the proceedings and notes of the mechanical experts, as well as the conclusions of the unanimous committee. As the result of their conclusions, they recommended the acceptance of certain bids as

demanded on the basis of cheapness and efficiency. The Postmaster General, upon consideration of the facts set out in the report, adopted it and made the awards recommended.

The argument does not deny that the determination involved a certain amount of discretion, but the contention is that the report plainly shows upon its face that the award was not made on the basis of cheapness and efficiency. An elaborate argument is founded on these alleged patent errors in the awards.

There is no occasion to follow this argument. The determination of the Postmaster General involved the ascertainment of facts and the exercise of discretion; his was not a mere or plain ministerial duty. It is only where a plain or ministerial duty is imposed by law, and rights are involved therein, that the action of an executive officer can be compelled by mandamus, or restrained by injunction, both writs being somewhat correlative to each other. Having discretion, it is immaterial whether it was rightly exercised or not; his action is not the subject of judicial review. *United States ex rel. Riverside Oil Co.* v. *Hitchcock,* 190 U. S. 316–324, 47 L. ed. 1074–1078, 23 Sup. Ct. Rep. 698; *United States ex rel. Ness* v. *Fisher,* 223 U. S. 683–693, 56 L. ed. 610–613, 32 Sup. Ct. Rep. 356. In the first of those cases (quoted with approval in the latter) it was said: "Whether he decided right or wrong is not the question. Having jurisdiction to decide at all, he had necessarily jurisdiction, and it was his duty to decide as he thought the law was, and the courts have no power whatever under those circumstances to review his determination by mandamus or injunction."

2. Several important questions have been raised and discussed in this case. (1) Whether the plaintiff as a taxpayer, without showing any special interest, can maintain this suit. (2) Whether the United States is the real party in interest. (3) Whether the successful bidders, whose awards are sought to be annulled, are necessary parties?

Having determined the case against the plaintiff on its merits, these questions are not necessary to be decided, but on account of its growing importance in this jurisdiction, where the direct-

ing operations of the government are superintended and carried on, we shall also pass upon the first one above stated.

The plaintiff, a disappointed bidder in this competition, seeks, under the guise of a taxpayer of the United States, to annul the successful bids on the ground that an unlawful excessive expense will be incurred thereby, to its detriment. As a corporation it pays the corporation income or excise tax imposed by the act of 1909, and is called upon to pay increased charges, which it denominates a tax, upon such imported goods as it may consume. Is this a sufficient interest to authorize its maintenance of the suit? We think not. True, it has been held that a property taxpayer of a county may maintain a bill to prevent an illegal disposition of the moneys of the county, by the county authorities, or the illegal creation of a debt which the taxpayers will be compelled with certainty to pay through increased taxation upon their tangible property. *Crampton* v. *Zabriskie,* 101 U. S. 601–609, 25 L. ed. 1070, 1071.

The ground of the doctrine as applied to municipal corporations is thus stated: "The right has been recognized by the State courts in numerous cases; and from the nature of the powers exercised by municipal corporations, the great danger of their abuse, and the necessity of prompt action to prevent irremediable injuries, it would seem eminently proper for courts of equity to interfere upon the application of the taxpayers of a county to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create burdens upon property holders. Certainly, in the absence of legislation restricting the right to interfere in such cases to public officers of the State or county, there would seem to be no substantial reason why a bill by one on behalf of individual taxpayers should not be entertained to prevent the misuse of corporate powers." See also *Roberts* v. *Bradfield,* 12 App. D. C. 453–460, s. c. 175 U. S. 291, 44 L. ed. 168, 20 Sup. Ct. Rep. 121.

Municipal corporations are convenient agencies of government for purposes of local administration, which include special powers of local taxation; their powers are limited by law, and

their officers are in the nature of trustees for the people of the community upon which they are imposed. It is on account of these special conditions that the right of action of taxpayers, on behalf of themselves and the mass of others, has been maintained to restrain an illegal action that, unless prevented, would work irreparable injury to the community. And in such cases the tendency of the State cases is to require a showing of some specific injury. *Miller* v. *Grandy,* 13 Mich. 540–550; *Roosevelt* v. *Draper,* 23 N. Y. 318–323; *Cicero Lumber Co.* v. *Cicero,* 176 Ill. 9–29, 42 L.R.A. 696, 68 Am. St. Rep. 155, 51 N. E. 758. But a very different question of public policy is presented when a taxpayer, as such, undertakes to interfere with the action of an executive department of the State or the Federal government, blocking its actions, and seriously interfering with its orderly and regular administration. There must then be some special right of person or property shown that is not common to all members of the community, to warrant the action. *Jones* v. *Reed,* 3 Wash. 57–64, 27 Pac. 1067; *State ex rel. Taylor* v. *Lord,* 28 Or. 498–527, 31 L.R.A. 473, 43 Pac. 471; *Peeples* v. *Byrd,* 98 Ga. 688–695, 25 S. C. 677.

The same view has been strongly intimated by the Supreme Court of the United States in a recent case. *Wilson* v. *Shaw,* 204 U. S. 24–31, 51 L. ed. 351–355, 27 Sup. Ct. Rep. 233. This was a suit to restrain the payment by the United States Treasurer of the cost of the acquisition of the property rights in the Panama canal, which was under construction. On account, doubtless, of the importance of the question involved in the power to construct the canal, the court passed by the objections to the bill on other grounds. In doing so, however, this significant language was used: "For the courts to interfere, and, at the instance of a citizen who does not disclose the amount of his interest, stay the work of construction by stopping the payment of money from the Treasury of the United States therefor, would be an exercise of judicial power which, to say the least, is novel and extraordinary. Many objections may be raised to the bill. Among them are these: Does plaintiff show sufficient pecuniary interest in the subject-matter? Is not the

suit really one against the government, which has not consented to be sued ?  Is it any more than an appeal to the courts for the exercise of governmental powers which belong exclusively to Congress ?  We do not stop to consider those or kindred objections; yet passing them in silence must not be taken as even an implied ruling against their efficiency.  We prefer to rest our decision on the general scope of the bill."

Without passing upon the other questions suggested, our conclusion is that the bill was rightly dismissed, both on the merits, and on the want of interest in the plaintiff to bring the suit.

The decree is affirmed with costs.