# CIRCUIT COURT OF BALTIMORE CITY.

Filed October 3, 1924.

THE PUBLIC SERVICE COMMISSION
VS.
THE NORTHERN CENTRAL RAILWAY.

*Attorney-General Thomas H. Robinson* and *Assistant Attorney-General Edward H. Burke* for complainant.
*Shirley Carter* for defendant.

STEIN, J.—

By these proceedings the Public Service Commission of Maryland seeks to restrain The Northern Central Railway from issuing 71,600 shares of its capital stock, which the railway company is about to issue, without first securing as a condition precedent thereto an order from the commission authorizing such issue.

The railway contends: That it is a consolidated corporation incorporated under special acts of Maryland and of Pennsylvania, under which it operates as a common carrier engaged in interstate and intrastate transportation of freight and passenger traffic, with a line and tracks in and through Maryland and Pennsylvania and to and in New York; and is so engaged in intra and interstate commerce; and is subject to the Interstate Commerce Commission; which, under the Acts of

Congress, must and will authorize the issuance of said shares of stock; that when the Interstate Commerce Commission will not have any jurisdiction either to allow or forbid its issuance, the proceeds of which are to be used in developing and maintaining efficiently the railway's interstate commerce business. So that the railway has refused and still refuses to apply to the Public Service Commission of Maryland for authority to issue the stock.

Since the National Transportation Act of 1920, Congress has exclusive jurisdiction and control over the right of a common carrier engaged in interstate commerce to issue stock or bonds, the proceeds of which the issuing carrier intends to use "in developing and maintaining efficiently" an interstate commerce railway.

The Supreme Court has construed this Act in three cases, viz: Wisconsin vs. C., B. & Q., 257 U. S. 563; The New England Divisions Cases, 261 U. S. 184, and Dayton-Goose Creek Ry. vs. U. S., 263 U. S. 456. In this last named case the Court said that the Transportation Act adds a new and important object to previous interstate commerce legislation and that

"The new Act seeks affirmatively to build up a system of railways *prepared to handle promptly all the interstate traffic of the country*"

and that

"In solving the problem of maintaining the efficiency of an interstate commerce railway system which serves both the States and the Nation, Congress is dealing with a unit in which State and interstate operations are often inextricably commingled. When the adequate maintenance of interstate commerce involves and makes necessary on this account the incidental and partial control of interstate commerce, the power of Congress to exercise such control has been clearly established."

Ibid, at page 485.

In the Wisconsin case, 257 U. S. at 589, the Court said, "Congress in its control of its interstate commerce system is seeking in the Transportation Act to make the system adequate to the needs of the country by securing for it a reasonable compensatory return for all the work it does, the

States are seeking to use that same system for interstate traffic. That entails large duties and expenditures on the interstate commerce system which may burden it unless compensation is received for the interstate business reasonably proportionate to that for the interstate business. *Congress as the dominant controller of interstate commerce may*, therefore, restrain undue limitation of the earning power of the interstate commerce system in doing state work. The affirmative power of Congress in developing interstate commerce agencies is clear. Wilson vs. Shaw, 204 U. S. 24; Luxton vs. North River Bridge Co., 153 U. S. 525; California vs. Central Pacific R. R. Co., 127 U. S. 139. In such development, it can impose any reasonable condition on a State's use of interstate carriers for interstate commerce it deems necessary or desirable. *This is because of the supremacy of the national power in this field.*

In Minnesota Rate Cases, 230 U. S. 362, where relevant cases were carefully reviewed, it was said, p. 399: "The *authority of Congress extends to every part of interstate commerce*, and to every instrumentality or agency by which it is carried on; and the full control by Congress of the subjects committed to its regulation is not to be denied or thwarted by the commingling of interstate and intrastate operations. This is not to say that the Nation may deal with the internal concerns of the State, as such, but that the execution by Congress of its constitutional power to regulate interstate commerce is not limited by the fact that intrastate transactions may have become so interwoven therewith that the effective government of the former incidentally controls the latter. This conclusion necessarily results from the supremacy of the national power within its appointed sphere."

In Laird vs. B. & O., 121 Md. 190-196, the Court of Appeals recognized this superior right of Congress and the need for its exercise, saying through Judge Stockbridge:

"It may well be that the time will come when the jurisdiction of the Interstate Commerce Commission will be so broadened as to confer upon it a power to regulate in some measure the fiscal management of the great interstate carriers of this country, and en-

able them to prevent in the future some of the ill-advised and unfortunate policies of the past."

This time came with the passage of the National Transportation Act of 1920.

Under the above decisions it is clear that the States retain no rights over the railroads (interstate carriers) which will affect substantially their capacity for carrying on interstate commerce. If the proposed stock issue was intended to be devoted exclusively to intrastate business within the State of Maryland, or so much thereof as was so intended to be used, the Public Service Commission of Maryland might have jurisdiction to pass upon the propriety of the issue; but so far as it is required to be used in connection with interstate commerce, Congress has committed the power to the Interstate Commerce Commission. To say that the Maryland Public Service Commission can require interstate carriers to submit to its jurisdiction the question of their issue of stock, the proceeds from the sale of which are to be used in connection with interstate commerce business, and does not have any power or authority to regulate the issuance thereof, save to approve the action of the Interstate Commerce Commission, is merely to require the interstate carriers to go through a fruitless formality; and is an admission that the Maryland Commission is without jurisdiction. To say that the Public Service Commission of Maryland has jurisdiction, to be exercised only in approving the order of the Interstate Commerce Commission, is to deny jurisdiction; for jurisdiction involves hearing and determination.

When a State permits a corporation to be incorporated to engage in interstate railroad business, under the commerce clause of the Federal Constitution, such carrier, when in the exercise of its charter rights, engages in interstate business, subjects itself to the control of the National Congress, the dominant controller of interstate commerce, and, therefore, the State has consented that in all matters affecting it as an interstate commerce carrier the control of the Nation should be supreme; so that the carrier might secure the advantages of engaging in interstate commerce.

If a common carrier engaged in interstate commerce, needing money to "develop or maintain efficiently that commerce," as a condition precedent to the issuing of its stock or bonds, was compelled to obtain the permission of the Interstate Commerce Commission, as well as that of the Public Service Commission of each State in which it had tracks," the great object of the Transportation Act "to build up a system of railways prepared to handle promptly all the traffic of the country" would be frustrated, and the refusal of the assent of the Public Service Commission of any of the States in which the carrier had tracks could destroy the carrier's credit and cause a receivership.

From which it appears that the Public Service Commission of Maryland is not entitled to the relief it asks in this case. I will decree accordingly.