Ed. F. MoFaddin, Justice (dissenting). The majority has decided a case that is moot. Such procedure is contrary to our established precedents in which we have refused in all instances — except election controversies[1] to decide a case that does not present a justiciable issue. In Quellmalz v. Day, 132 Ark. 469, 201 S. W. 125, we said: “It is not the policy of onr law with respect to litigated cases to decide questions which have ceased to be an issue by reason of facts having intervened rendering their decision of no practical application to the controversy between the litigants. Pearson v. Quinn, 113 Ark. 24; Tabor v. Hipp, 136 Gra. 123, Ann. Cas. 1912C 246.” In Kays v. Boyd, 145 Ark. 303, 224 S. W. 617, we said: “It is the duty of this court to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon abstract propositions or to declare principles of law which cannot affect the matter in issue in the case at bar.” In Kirk v. North Little Bock School Dist., 174 Ark. 943, 298 S. W. 212, we said: “It has never been the policy of this court with respect to litigated cases to decide cases which, by reason of intervening facts, seemed to be of no practical application to the controversy between the parties. It is the duty of the courts to decide actual controversies by a judgment or decree which can be carried into effect, but not to give opinions upon controversies or declare principles of law which cannot be executed or which cannot have any practical effect in settling the rights of the' litigants under the judgment or decree rendered. Mabry v. Kettering, 92 Ark. 81, 122 S. W. 115, Kays v. Boyd, 145 Ark. 303, 224 S. W. 617; Blakely v. Newton, 157 Ark. 351, 248 S. W. 907; Mills v. Green, 159 U. S. 651, 16 S. Ct. 132, 40 L. Ed. 293; Jones v. Montague, 194 U. S. 147, 24 S. Ct. 611, 48 L. Ed. 913; Wilson v. Shaw, 204 U. S. 24, 27 S. Ct. 233, 51 L. Ed. 351; and So. Pac. Terminal Co. v. Int. Commerce Com., 219 U. S. 498, 31 S. Ct. 297, 55 L. Ed. 310.” Thus it has long been the policy of this Court— and it is the policy of other Courts throughout the nation — to refuse to decide questions not essential to settle t'he rights of the litigants. The question that the majority has decided in the case at bar — that the Crittenden Court rule of 1933 is void — does not and cannot affect the rights of Letaw in the case at bar. Therefore, it is a moot question, and the time of this Court should not have been consumed in deciding it. To clearly demonstrate that the question decided is moot, I review briefly the facts in this matter: 1. On August 6, 1953, Letaw filed suit against Dodd’s Drug Store in the Crittenden Chancery Court, seeking to recover judgment against Dodd and to foreclose an alleged lien on personal property. That was the case of Letaw v. Dodd, in which attorneys Roberts and Norfleet represented Letaw. 2. The Clerk of the Crittenden Chancery Court notified these attorneys of the Crittenden Court rule of 1933, saying in part:. “These rules require that all out-of-state attorneys associate with local counsel residing in the State of Arkansas.”[2] On August 11, 1953, Letaw and his attorneys filed a motion — in the case of Letaw v. Dodd — asking the Court to relax the said rule. 3. On August 31, 1953,- — in the case of Letaio v. Dodd — the Court refused to relax the rule because each of the said attorneys was then a non-resident of the State of Arkansas [2] So far as we know, the merits of the case of Letaw v. Dodd are still pending' in the Crittenden Chancery Court. 4. On November 17, 1953, Letaw filed a transcript in this Court' — in Case numbered 362 herein — attempting to appeal from the order of the Crittenden Chancery Court which refused to relax the rule against non-resident attorneys. Of course, there was no final order on which to base an appeal; and on February 8, 1954, this Court dismissed the appeal of Letaw “. . . for want of a final, appealable order”; and that ended the appeal to this Court of the case of Letaw v. Dodd, and left the controversy pending in the Crittenden Chancery Court, where it had always been pending. 5. On December 14, 1953, the Chancery Court of Crittenden County entered another order in the case of Letaw v. Dodd, which order recited that Attorney Norfleet was then a resident of St. Francis County, Arkansas, and had been since September 11, 1953, and that since Attorney Norfleet -was a resident of the State of Arkansas,[2] there was full compliance with the rule of the Court, and that Letaw could proceed with a lawsuit against Dodd. The order concluded: “It is, therefore, by the Court, considered, ordered and decreed that the plaintiff and his attorneys, Marvin Brooks Norfleet, and A. Bell Roberts, may now proceed with the trial of this cause, to all of which Marvin Brooks Norfleet and A. Bell Roberts excepted, said exceptions being duly noted herein.” 6. At the time the aforesaid order was made on December 14, 1953, the learned Chancellor delivered an opinion, which shows much study and thought. A copy of the Chancellor’s opinion is attached to this dissenting-opinion. From this opinion of the Chancellor, it is clear that ever since December 14, 1953, Letaw and his attorneys have been at perfect liberty to proceed with their case against Dodd: yet — as above quoted — the attorneys excepted to the very order that allowed them to proceed. When the Court allowed Letaw to proceed with his case against Dodd, then the question here presented became moot. 7. But notwithstanding the order of December 14, 1953, we find that on December 29, 1953, Letaw filed the present case in this Court. It is Case No. 391, and is the one that the majority is now deciding. In this case, Letaw and his attorneys, Roberts and Norfleet, ask this Court to enjoin Chancellor Smith from enforcing the Crittenden County Court rule against them. It is worthy of note (a) that his present ease was a Petition for Writ of Prohibition, seeking to prohibit Chancellor Smith from enforcing the Crittenden County Court rule against them; and (b) that the case was filed here fifteen days after Chancellor Smith had made an order that permitted Letaw and his attorneys to proceed in Letaw’s case. In order to decide the controversy, this Court has treated the Petition for Prohibition as a Petition for Certiorari. We have a right to do that; but still the whole controversy is moot, and has been moot since December 14, 1953, when Letaw and his attorneys were notified by the Crittenden Chancery Court that they had a full right to proceed with the case of Letaw v. Dodd. Prom the foregoing seven numbered paragraphs, I emphasize that the facts demonstrate that the present case does not present a justiciable controversy affecting Letaw’s rights: rather they show that Letaw and his attorneys have undertaken to reform the Court rules of Crittenden County in a situation that does not now affect Letaw’s rights. I am surprised that this Court has let itself be used for such a result. Why should we consider the rules of the Crittenden Chancery Court, when such consideration cannot possibly affect the right of Letaw to proceed in his case against Dodd! I cannot understand it. Now this dissent might well stop at this place: but since the majority has seen fit to test the Crittenden County Court rule by § 25-108 Ark. Stats., I think it not amiss to give my views on that Statute. That section of the Digest is a part of Act 222 of 1911. In 1938, the People of Arkansas adopted Amendment 28 to the Constitution, which Amendment reads: “The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law.” Since 1939 it has been the duty of this Court to make rules regulating the practice of law; and I submit that this Court should now make a rule, effective immediately, which rule should provide that any non-resident attorney must associate with him an attorney resident in Arkansas in any case that may be filed in any Court of this State. As pointed out in the opinion of the Chancellor of December 14, 1953, other States and other jurisdictions have such a rule; and we should have one, which would be just like the Crittenden County rule, as interpreted by its Chancellor. Because the majority has decided a case that is moot, I respectfully dissent. APPENDIX Opinion of Chancellor Smith, Delivered December 14, 1953, In the Case of Letaw v. Dodd. G-entlemen, in order that there not be any confusion or misunderstanding or any reason for any mis-statements, 1 am going to undertake to make my position clear in regard to this matter. On August 6, 1953, the plaintiff filed in this court, his petition against the defendant in which he alleged that the defendant was indebted to him in certain sums. The plaintiff prayed judgment for the amount of that indebtedness and asked that that judgment be declared a lien upon certain personal property belonging to the defendant; that if the judgment was not paid within a certain time to be fixed by the court, that the lien be ordered foreclosed and a commissioner appointed to sell the property to satisfy the judgment. Summons was duly issued and served on the defendant and on the 7th day of September, 1953, the defendant filed in this court, his answer, denying the allegations contained in the complaint. Prior to that time a motion was filed attacking the validity of a rule of court that was promulgated on August 31, 1933, recorded in the permanent records of this court and by that order or rule it was to become effective on October 16, 1933. That rule of court in effect, provided that a non-resident attorney who was licensed to practice lawr in the State of Arkansas or in the State of Ms residence, that is, by the highest court in the state of his residence, would be permitted to practice in this court provided that all pleadings be signed by a resident attorney upon whom process might be had and who might be responsible to the court for the conduct of the litigation. It is significant to note that rule was not questioned for twenty years. Many, many, many attorneys from other states have complied with the rule and practiced in this court. Many of them during my three years tenure on the bench. I assume, and must assume that there was reason for the promulgation of that rule. Eules of similar nature are enforced in many other courts. A rule almost identical in language is in effect in the Federal Courts of the State of Arkansas and rules in many other states are similar. There is a rule, according to the record in this case, in the Probate Court of Shelby County, Tennessee to the effect that no one except a licensed attorney in Tennessee and a resident of Shelby County shall be permitted to practice in that court. That is a record before this court in this case. When a rule, promulgated by a court, is duly recorded in the permanent records of that court, it becomes just as effective as if it were a law passed by the Legislature of the State and should be given the same effect in the same manner as a rule or law passed by the Legislature. On August 31,1953, a hearing was had on that motion and testimony was taken in open court. The testimony consisted of the evidence of the two attorneys representing the plaintiff and certain documentary evidence. There was no testimony, at least competent testimony, to the effect that the enforcement of this rule would deprive the plaintiff of an opportunity to try this law suit upon •compliance with the rule. The parties simply introduced their license, one of them exhibiting his license granted by the Arkansas Supreme Court in 1919 and his license to practice in the courts of Tennessee, the other his license in the State of Tennessee, each stating under oath that he was, at that time, a resident of Tennessee. There was no testimony to the effect that plaintiff could not comply with the rule. They simply relied upon the Statute of 1911, the laws of the State of Arkansas which provided and which does provide that an attorney who has been licensed to practice before the highest court in his state shall be permitted to practice law in the courts of this state. The license issued to every member of the Bar of Arkansas, over eleven hundred in number, contains the same provision, that the holder of that license is permitted to practice in the Supreme Court of this State and all inferior courts of the State. It is the opinion of the court that does not give the holder of that license the privilege to ignore the rules promulgated by courts in the exercise of their inherent power, so a statute conferring upon non-resident attorneys the right to practice in this state could certainly confer upon them no greater right than the licensed attorneys of this state. The laws of the State of Arkansas provide that before attorneys can be licensed in the first place in the State of Arkansas, that he must be a resident of this state and must have resided in this state for a specified length of time. We have no cases in this court, but the great weight of the decisions of other states is to the effect that where residence is a prerequisite to practice in the first place, that upon the removal of a person, it acts not as a revocation of his license, but as a suspension. Upon the testimony before the court on August 31st, the court was unwilling to declare as a matter of law, that the rule was invalid. There is not now, and there never has been for one single minute since that time, any effort, any intention, any desire upon the part of the court to alter the ruling of August 31, 1953. There has never been any indication, any intention or desire to have any re-hearing in connection with the order made on August 31, 1953. It has come to the attention of the court and admitted in open court this morning that since the 11th of September, 1953, or about the 11th of September, 1953, one of the attorneys, the attorney who was licensed to practice law in Arkansas, has returned or removed to his former home in St. Francis County, Arkansas, and is now a bona fide resident of the State of Arkansas. The court takes the position without, as I say, undertaking to alter, revise or amend the order of August 31, 1953, to any extent, good or bad, whether valid or invalid, no longer applies to that attorney and that he hás a perfect right to proceed in the trial of his client’s cause in this court. It is immaterial, a matter of no consequence, whether Mr. Roberts intended to take the lead in the case, or whether Mr. Norfleet intends to take the lead in the case. Insofar as Mr. Norfleet is concerned, he is not a non-resident of the State of Arkansas, and therefore, the rule has no application to him whatsoever. There is an attorney of record in this case upon whom process of service can be had and who can be responsible for the conduct of the law suit, who could be punished, if need be, and I am satisfied there won’t, by process of this court. I am not unmindful of the fact that there has been an attempted appeal from the order of August 31, 1953. I did not think then and I do not think now that the order of August 31, 1953, was an appealable order and, therefore, I am of the opinion that the jurisdiction of that case is still in this court. There has been a complaint filed and an answer filed. There has been no proof taken by either side on the merits of that case; they are simply, insofar as the parties are concerned, a complaint alleging certain facts to l\e true, and an answer denying those facts to be true. It is, therefore, incumbent upon the plaintiff, who has the burden of proving his case, to act. I am not unmindful of the rule of court and the decision of the Supreme Court to the effect that when there is an appeal to the Supreme Court from a former order or judgment, that the lower court loses all jurisdiction. The jurisdiction is there and not here because the case is transferred; and by a very early case of Gates v. Solomon, 73 Ark. 6. That was a case where the Circuit Court had either sustained or overruled a demurrer to the complaint. The court sustained-the demurrer to the complaint and no further action was taken except the circuit court rendered judgment against the plaintiff for the costs of the case and onr Supreme Court said that the Circuit Court was in error in rendering costs against the plaintiff for the action while it was still pending, there being no dismissal and there was no dismissal in this case and that thought unquestionably ran through the minds of the- attorneys when the court announced the ruling, that he assumed that the complaint was being dismissed and he was told by the court then there was no reason to dismiss the complaint, that the attorneys could proceed with the trial of their cause as soon as the rule was complied with and it was not a final judgment and no appeal lies from it. The appeal was prematurely taken, the case is still pending in the Chancery Court, hi the case of McCarroll, Commissioner of Revenue v. Gregory-Robinson-Speas, Inc., the appellant admitted in the Supreme Court that the only order rendered by ihe trial court was an order overruling his demurrer to the complaint and granting an appeal from such order to the Supreme Court. Certainly it cannot be denied that the order made in the instant case was the one holding tinu the rule of the court was valid. The Supreme Court continued by saying: . “The order overruling his demurrer to the complaint and granting an appeal from such order was an interlocutory order and not being a final judgment was not appealable to this court. The appeal was, therefore, prematurely taken. The case is still pending in the chancery court, notwithstanding the attempted appeal from the order overruling the demurrer to the complaint.” Citing the case of Gates v. Solomon in 73 Ark. 8, which I just mentioned, goes further in saying that: “This court decided in the case of Davis v. Biddle, 117 Ark. 393, that no appeal lies where there is no final judgment, and an order sustaining a demurrer being only an interlocutory judgment, an appeal therefrom would be dismissed for want of jurisdiction and also decided in State v. Greenville Stone & Gravel Co., 122 Ark. 151, that orders overruling demurrers were not appeal-able since they were not final orders and that the mere fact that a constitutional question was involved was not sufficent to make the order final.” In a more recent case of Piercy v. Baldwin, 205 Ark. 413, the plaintiff in that case brought suit in ejectment against Luther Baldwin and Lois Baldwin, his wife, as well as against other defendants. In apt time, Lois Baldwin, on behalf of herself and the other defendants, filed a motion to stay the proceedings. In short, her motion was based upon the fact that her husband, Luther Baldwin, was a member of the armed forces of the United States and, therefore, was entitled to the benefit of the Soldiers and Sailors Civil Relief Act. Her prayer was that the proceedings in the cause be stayed during the period of military service of her husband and for three months thereafter. A response was filed to that motion and upon a hearing the court sustained the motion to stay the proceedings as to the defendants, Lois Baldwin and Luther Baldwin, whereupon, the plaintiff then moved the court to permit him to proceed with the trial as to the other defendants. That motion was denied by the court and the plaintiff prayed and was granted an appeal to the Supreme Court. In the Supreme Court, the plaintiff contended first that the trial court abused its discretion in granting the defendant’s motion for a stay of proceedings and second, that in any event, there was an abuse of discretion in granting the defendant’s motion for a stay of proceedings and second, that in any event, there was an abuse of discretion, an error in denying the plaintiff’s motion to permit him to proceed against the other defendants. In passing on those motions, our Supreme Court said: “We cannot decide these questions for the reason ■that the appeal has been prematurely brought and we are without jurisdiction. The order from which this appeal comes is in no sense a final order, from which an appeal may be prosecuted. In effect, the order continues the cause during the military service of appellee, Luther Baldwin, and for three months thereafter. The cause has not been tried on its merits, but is still pending. In Harlow v. Mason, 117 Ark. 360, this court, quoting from an earlier case, said: ‘A judgment to he final must dismiss the parties from the court, discharge them from the action or conclude their rights to the subject-matter in controversy.’ ” Therefore, this court is of the opinion that the cause has not been removed to the Supreme Court, notwithstanding the fact that there has been lodged there a transcript of the pleadings and the testimony that was taken here in August. The order, upon its face, shows that it did not conclude the rgihts of the parties, that they were not dismissed from the action; that they were not precluded from proceeding in this cause. I am of the opinion that if the Supreme Court considers the matter now pending before it at all, that it will consider it as an original petition for a writ of mandamus. If that is true, there will be an original action in the Supreme Court and this action is still pending in this court. As I say, without any regard to the validity of the rule, without any regard to the correctness of the August 31, 1953 order, that under the facts as they now exist, and without any modification of the previous order or any attempt to do so, the court simply makes an order at this time finding that one of the attorneys for the petitioner is a bona ficle resident of the State of Arkansas, with license to practice in the Supreme Court of this State and all inferior courts, that the rule, valid or invalid, promulgated in 1933, no longer applies to that attorney. The order is that the plaintiff be and he is hereby granted permission at this time to proceed with the trial of his cause with his present solicitors, Mr. Roberts and Mr. Norfleet. For election controversies, see Cain v. Carl Lee, 171 Ark. 155, 283 S. W. 365; and Brown v. Anderson, 210 Ark. 970, 198 S. W. 2d 188. The majority opinion says: “Respondent briefed his cause on the theory, not too clearly defined, however, that the rule had a different meaning”. But it is evident that the Clerk of the Court, and the Court itself, all the time declared the rule as meaning State, instead of County. There was never a time — -in the record in this case- — -when the rule was understood as meaning only attorneys resident of Crittenden County. It was all the time understood as meaning attorneys resident of the State of Arkansas.