LOUIS KAMM, INCORPORATED, A BODY CORPORATE, PLAINTIFF-APPELLANT, v. JULIUS E. FLINK, CARL FLINK, HERMAN SPERLING AND JOSEPH MANKOFF, DEFENDANTS-RESPONDENTS.

Submitted May 25, 1934—Decided October 5th, 1934.

For the appellant, *Aaron Marder*.

For the respondents, *Milton M. Unger*.

The opinion of the court was delivered by

HEHER, J. The judicial action here challenged is a judgment in favor of defendants, based upon an order striking out the complaint as sham.

We are confronted, *in limine*, with the question of whether the complaint is frivolous. It is in three counts. The gravamen of the first is that defendants (a) "wrongfully, maliciously and improperly induced and caused the Guarantee Building and Loan Association of the City of Newark (of which defendant Julius Flink was president) to drop and ignore plaintiff (who had procured a prospective purchaser of a theatrical property which the loan association desired to sell) as the broker for the sale of said premises," after plaintiff had disclosed the identity of such purchaser, one Louis Levin, upon the assurances of Julius Flink and associate members of the executive committee of the loan association that, "since such customers were plaintiff's only stock in trade," the disclosure of "the customer's name would be held in strictest confidence, and that the plaintiff would not in any way be injured" thereby, and "to recognize Herman Sperling

(Julius Flink's brother-in-law) and/or Joseph Mankoff (Sperling's partner in the real estate brokerage business) as the broker who sold said premises to Levin, and to pay or agree to pay said Herman Sperling and/or Joseph Mankoff commission for said sale in approximately the sum of $4,500," which was later "divided between said defendants;" (b) "did entice and steal from the plaintiff said Louis Levin as a customer for the purchase of said premises;" and (c) "unlawfully, improperly and maliciously interfered with plaintiff's relation with Louis Levin as a customer for the purchase of the aforesaid premises;" to the damage of plaintiff in the sum of $4,500, the commission which he would have otherwise earned and received. The gist of the second count is a conspiracy on the part of the defendants to effect the foregoing objects. And the third count averred that defendant Julius E. Flink "falsely represented to plaintiff that he would not disclose the name of plaintiff's customer," if plaintiff would reveal his identity, "and that the plaintiff would not be in anyway damaged by said disclosure;" that said Flink "well knew that said representations were false and that he intended to disclose the name of plaintiff's customer and intended to damage plaintiff thereby;" and that plaintiff, "believing said representations to be true, acted upon them, and, in reliance" thereon "disclosed the name of plaintiff's customer."

The complaint is sufficient in law. The action sounds in tort. The ways in which one may become liable to an action as for tort are the following: (1) By actually doing to the prejudice of another something he ought not to do; (2) by doing something he may rightfully do, but wrongfully or negligently doing it by such means or at such times or in such manner that another is injured; and (3) by neglecting to do something which he ought to do, whereby another suffers an injury. *Cooley Torts* (4th ed.), § 44. Of course, that which it is right and lawful for one man to do cannot furnish the foundation for an action in favor of another. And the absence of a commendable motive on the part of the party exercising his rights is not the legal substitute or

equivalent for the thing amiss which is one of the necessary elements of a wrong. "An act which does not amount to a legal injury cannot be actionable because it is done with a bad intent." *Cooley Torts* (*4th ed.*), § 56. But motive is ofttimes a determinative in appraising conduct. The guiding principle was aptly stated by the Supreme Court of Massachusetts: "It is said also that, where one has the lawful right to do a thing, the motive by which he is actuated is immaterial. * * * If the meaning of this and similar expressions is that, where a person has the lawful right to do a thing irrespective of his motive, his motive is immaterial, the proposition is a mere truism. If, however, the meaning is that where a person, if actuated by one kind of a motive, has a lawful right to do a thing, the act is lawful when done under any conceivable motive, or that an act lawful under one set of circumstances is therefore lawful under every conceivable set of circumstances, the proposition does not commend itself to us as either logically or legally accurate. In so far as a right is lawful it is lawful, and in many cases the right is so far absolute as to be lawful whatever be the motive of the actor, as, where one digs upon his own land for water, or makes a written lease of his land for the purpose of terminating a tenancy at will, but in many cases the lawfulness of an act which causes damage to another may depend upon whether the act is for *justifiable cause;* and this justification may be found sometimes in the circumstances under which it is done, irrespective of motive, sometimes in the motive alone, and sometimes in the circumstances and motive combined." *Plant* v. *Woods,* 176 *Mass.* 492; 57 *N. E. Rep.* 1011; 51 *L. R. A.* 339.

The primary inquiry therefore is, what constitutes a wrong that the law will redress. All wrong may be considered as merely a privation of right, and the plain, natural remedy for every species of wrong is the being put in possession of that right whereof the party injured is deprived. This may either be effected by a specific delivery or restoration of the subject-matter in dispute to the legal owner, or, where that is not possible, or at least not an adequate remedy, by making the

sufferer a pecuniary satisfaction in damages. 3 *Bl. Com.* 116. There is no necessary identity, or even relation, of legal right and moral right. Legal right must be established on principles of general utility. A legal right may be said to be a well founded claim, enforced by sanctions. By legal rights are intended those to which the state gives its sanction. The sanction it gives is the sanction of remedies; so that a legal right may be said to be a claim which can be enforced by legal means against the persons or the community whose duty it is to respect it. 1 *Cooley Bl. Com.* 109, 113, note. "A tort or a wrong may be spoken of either as a breach or violation of a duty or an infringement of a right." 1 *Jaggard Torts* 2.

The case pleaded falls naturally into the classification of an actionable infringement of a property right, *i. e.,* the right to pursue one's business, calling or occupation free from undue interference or molestation. The wrongful act charged was the *malicious* interference with appellant's business. Its object and consequent, so the complaint charges, was the deprivation of the business and profit that would otherwise have accrued. Natural justice dictates that a remedy shall be provided for such unjust interposition in one's business. The luring away, by devious, improper and unrighteous means, of the customer of another is, on principle, an actionable wrong, if damage ensues.

The right to pursue a lawful business is a property right that the law protects against *unjustifiable* interference. Any act or omission which unjustifiably disturbs or impedes the enjoyment of such right constitutes its wrongful invasion, and is properly treated as tortious. The apposite principle was stated in *Hollenbeck* v. *Ristine,* 105 *Ia.* 488; *75 N. W. Rep.* 355: "If one intentionally cause temporal loss or damage to another without justifiable cause and with malicious purpose to inflict it, that other may recover, in an action of tort, the damage he has sustained as a natural and proximate result of the wrong." And in *Walker* v. *Cronin,* 107 *Mass.* 555, it is said: "The general principle is that, in all cases where a man has a temporal loss or damage by the

wrong of another, he may have an action upon the case to be repaired in damages. The intentional causing of such loss to another without justifiable cause, and with malicious purpose to inflict it, is of itself a wrong. * * * Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition, but he has a right to be free from *malicious and wanton interference, disturbance, or annoyance.* If disturbance or loss comes as a *result of competition, or the exercise of like rights by others,* it is *damnum absque injuria,* unless some superior right by contract or otherwise is interfered with. But if it comes from the *merely wanton or malicious* acts of others, without the *justification of competition or the service of any interest or lawful purpose,* it then stands upon a different footing." Mr. Cooley states the general rule as follows: "An injury to a person's business by procuring others not to deal with him, or by getting away his customer, if unlawful means are employed, such as fraud or intimidation, or if done *without justifiable cause,* is an actionable wrong." 2 *Cooley Torts* § 230.

In *Bowen* v. *Hall, L. R.,* 6 *Q. B. D.* 333; 50 *L. J. Q. B.* 305; 1 *Eng. Rul. Cas.* 717, the Court of Appeal of England applied the ruling principle: Wherever a man does an act which in law and in fact is a wrongful act, and such an act as may, as a natural and probable consequence of it, produce injury to another, and which in the particular case does produce such an injury, an action on the case will lie. * * * Merely to persuade a person to break his contract, may not be wrongful in law or fact * * *. But if the persuasion be used for the *indirect purpose of injuring the plaintiff, or of benefiting the defendant, at the expense of the plaintiff, it is a malicious act,* which is in law and in fact a wrong act, and therefore a wrongful act, and therefore an actionable act if injury ensues from it."

This is a principle that has received the recognition of this court. While a trader may lawfully engage in the sharpest competition with those in a like business, by offering extra-

ordinary inducements, or by representing his own goods to be better and cheaper than those of his competitors, yet when he oversteps that line and commits an act with the *malicious intent of inflicting injury upon his rival's business,* his conduct is illegal, and if damage ensues from it the injured party is entitled to redress. And it does not matter whether the wrongdoer effects his object by persuasion or by false representation. The courts look through the instrumentality or means employed to the wrong perpetrated with the malicious intent, and provides the remedy to redress that wrong. *Van Horn* v. *Van Horn,* 56 *N. J. L.* 318.

Self-enrichment or fraternal interest, and not personal ill-will, may well have been the motive. But it is malice nevertheless. While ill-will toward a person is malice in its common acceptation or popular sense, in the technical, legal sense it is the intentional doing of a wrongful act without justification or excuse. *Brennan* v. *United Hatters, 73 N. J. L.* 729; *McFadden* v. *Lane,* 71 *Id.* 624. This is the English definition. *Bromage* v. *Prosser,* 4 *B. & C.* 247; 10 *E. C. L.* 321; 107 *Reprint* 1051; 1 *C. & P.* 475. And a "wrongful act," within the intendment of this definition, is any act which in the ordinary course, will infringe upon the rights of another to his damage, *except it be done in the exercise of an equal or superior right. Brennan* v. *United Hatters, supra.*

Justification connotes just, lawful excuse; it excludes malice. Malicious interposition is unjustifiable in the legal sense. Although there is authority for the view that "some acts in themselves illegal admit of legal excuse" (*Allen* v. *Flood* (1898), *A. C.* 1, 94; 17 *E. R. C.* 285), it is paradoxical to say that, as to one who suffers its injurious consequences, an act is both justified and wrongful. In any event, the modern English doctrine is that an intent is wrongful if malicious. *Temperton* v. *Russell,* 1 *Q. B.* 715, 728; *Bowen* v. *Hall, supra.* And malice may be inferred from the absence of just cause or excuse. *Wendelken* v. *Stone,* 88 *N. J. L.* 267. If the challenged action were taken for the indirect purpose of doing injury to appellant, or of benefiting respondents at the

former's expense, it is a wrongful act, unless done in the exercise of an equal or superior right, and therefore a malicious act, and actionable. But the case made by appellant clearly negatives the existence of an equal or superior right. The identity of its customer was disclosed, under the seal of confidence, for the legitimate use of the loan association only, and an obligation was thereby imposed upon Flink not to make an unfair use of the information thus given. Appellant had a property interest therein which the law will protect against unjust use by one who has gained it by virtue of a confidential relation. And this obligation may, in certain circumstances, be implied. Compare *Stone* v. *Grasselli Chemical Co.*, 65 *N. J. Eq.* 756; *Witherow Steel Corp.* v. *Donner Steel Co.*, 31 *Fed. Rep.* (*2d*) 157; *American Slay Co.* v. *Delaney*, 211 *Mass.* 229; 97 *N. E. Rep.* 911. Where the duty is imposed, either expressly or by implication, its breach is tortious and therefore actionable. The right of competition manifestly does not justify the use asserted by appellant to have been made of the information thus disclosed. The laws of trade confer no such prerogative. It did not have the justification of fair competition or the service of any lawful interest or purpose.

The justification must be "as broad as the act, and must cover not only the motive and the purpose, or, in other words, the object sought, but also the means used." *Martell* v. *White*, 185 *Mass.* 255; 69 *N. E. Rep.* 1085. And this test of right conduct was also therein declared: "The weapons used by the trader who relies upon this right [of competition] for justification must be those furnished by the laws of trade, or at least must not be inconsistent with their free operation. No man can justify an interference with another man's business through fraud or misrepresentation nor by intimidation, obstruction, or molestation." This right to pursue one's business without such undue interference, and the correlative duty, are fundamentals of a well-ordered society. They inhere basically in the relations of those bound by the social compact. They have their roots in natural justice. Compare *Bayonne Textile Corp.* v. *American Federation of Silk*

*Workers,* 116 *N. J. Eq.* 146. When conflict attends the assertion of what each of several disputants conceives to be his legal right to pursue, in the chosen way, his business or calling, this principle is the polestar in the accommodation and adjustment of the incompatible claims.

There is analogy in principle between the case made by the complaint and those holding to be actionable wrongs the palming off of articles of merchandise on an unsuspecting buyer or user, as the articles of another, and the malicious inducing of another to break his contract for service with the plaintiff, by which the latter is injured in his business. Compare *Van Horn* v. *Van Horn, supra; Noice, Admx.,* v. *Brown,* 39 *N. J. L.* 569; *Witherow Steel Corp.* v. *Donner Steel Co., supra; Walker* v. *Cronin, supra; Perkins* v. *Pendleton,* 90 *Me.* 166; 38 *Atl. Rep.* 96; *Bowen* v. *Hall, supra; Lumley* v. *Gye,* 2 *El. & B.* 216.

And it is now the generally accepted rule, in this country and in England, that unjustifiable interference with the contractual relation is an actionable wrong, whether the contract stipulated for personal service or not. *Angle* v. *Chicago, &c., R. Co.,* 151 *U. S.* 1; 14 *S. Ct.* 240; 38 *L. Ed.* 55; *Gore* v. *Condon,* 87 *Md.* 368; 39 *Atl. Rep.* 1042; *Beekman* v. *Marsters,* 195 *Mass.* 205; 80 *N. E. Rep.* 817; *Joyce* v. *Great Northern Railroad Co.,* 100 *Minn.* 225; 110 *N. W. Rep.* 975; *Lumley* v. *Gye, supra; Bowen* v. *Hall, supra; Quinn* v. *Leathem, A. C.* 495; 70 *L. J. P. C.* 76; 65 *J. P.* 708; 50 *W. R.* 139; 85 *L. T.* (*N. S.*) 289; 27 *Eng. Rul. Cas.* 66 and note; 1 *British Rul. Cas.* 197 and note; 15 *R. C. L.* 53, 54; *Temperton* v. *Russell, supra.* This is an extension of the application rather than a broadening of a fundamental principle, and is the result of the comparatively modern tendency to expand the rules designed to insure honest trading.

Nor is the protection thus given by the law confined to rights springing from enforceable contracts. If a tradesman or merchant is deprived of the business of others through one's wrongful conduct, he has a cause of action for the loss thus sustained, albeit there was no contractual relationship between him and the prospective patrons. Unjustifiable

interference with one's right to pursue his lawful business or occupation and to reap the earnings of his industry, is forbidden. The law enjoins the employment of practices that are outside of the domain of fair trade competition. The means made use of must be devoid of the taint of fraud, intimidation, obstruction and molestation. Such was the doctrine enunciated in a case involving an identical business. There was a general listing of the property with the broker for sale, without special agreement, and it was held to be immaterial that the transaction did not give rise "to such mutual obligations as in themselves constitute a contract." That is not a requisite of the cause of action. The underlying principle was stated thus: "Full, fair and free competition is necessary to the economic life of a community, but under its guise no man can, by unlawful means, prevent another from obtaining the fruits of his labor." *Skene* v. *Carayanis* 103 *Conn.* 708; 131 *Atl. Rep.* 497. Maliciously inducing a person not to enter into a contract with another, which he would otherwise have entered into, is actionable if damage results. *Temperton* v. *Russell, supra.*

And it is of no consequence that, by reason of non-compliance with the statute of frauds, the asserted contract is utterly void. Strangers to the agreement will not be permitted to interpose this defense. The parties thereto may abide by the stipulation regardless of the statute. *Rice* v. *Manley,* 66 *N. Y.* 82; *Clarke* v. *Philomath College,* 99 *Ore.* 366; 193 *Pac. Rep.* 470; 195 *Pac. Rep.* 822; 27 *C. J.* 307; *Williston on Contracts,* § 530.

The apposite principle also governs the cases holding that the wrongful gleaning, use or disclosure of trade secrets by subterfuge, whereby the good will of a business is appropriated, and an unfair advantage gained, and the use, without the sanction of the owner, of the information contained in books and lists of customers, acquired through a confidential relationship, constitute an unlawful invasion of property rights. Compare *Stone* v. *Grasselli Chemical Co., supra; Witherow Steel Corp.* v. *Donner Steel Co., supra; American Stay Co.* v. *Delaney, supra.* The gist of the action, in such cases, is the wrongful invasion of a property right—undue

interference with the plaintiff's business through unfair practices, to his pecuniary injury and loss.

The essence of the action, it seems, is not the conspiracy, but the damage done to the plaintiff. In an action on the case against several for a tort, though a conspiracy be charged in the complaint, one of the defendants may be convicted and the rest acquitted, the foundation of the action being the damage and not the conspiracy. To recover against all, a joint wrong must be shown, but if only one is shown to be concerned, the plaintiff may still recover against the one. The underlying principle is that the action is founded on the tort, and can, therefore, be sustained against one as well as against several for the damage resulting from the wrongful act. Upon no other theory, this court has held, can recovery be had against one alone, where conspiracy is alleged in an action against two or more, as two at least must participate to constitute conspiracy. The courts disregard the charge of conspiracy as an actionable element, and consider the malicious injury and the resulting damage as the foundation and support of the action. Conspiracy ordinarily is not the gist of the action, but is only matter of inducement or evidence. It is the rule in this state that, in an action charging conspiracy, a verdict may be rendered against one alone upon proof that he intentionally inflicted the injury through persuasion or by false representations, instigated by malice. *Van Horn* v. *Van Horn, supra.*

If conduct is complained of which only becomes actionable because of the dishonest combination to accomplish some wrongful act, this combination must be shown. And one cannot combine with himself; he must have associates. It is seldom, if ever, however, that a case can occur in which a man may not have redress without counting on the joint wrong; for the injury accomplished by means of the conspiracy may be treated as a distinct wrong in itself, irrespective of the steps that led to it. The general rule is that a conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action. The damage is the essence of the action,

not the conspiracy; and though the conspiracy may be said to be of itself a thing amiss, it must nevertheless, until something has been accomplished in pursuance of it, be looked upon as a mere unfulfilled intention of several to do mischief. *Adler* v. *Fenton,* 65 *U. S.* 407; 16 *L. Ed.* 696; *May* v. *Wood,* 172 *Mass.* 11; 51 *N. E. Rep.* 191; *Brackett* v. *Griswold,* 112 *N. Y.* 454; 20 *N. E. Rep.* 376; *Martens* v. *Reilly,* 109 *Wis.* 464; 84 *N. W. Rep.* 840; *Robertson* v. *Parks,* 76 *Md.* 118, 135; 24 *Atl. Rep.* 411; *Cooley Torts,* § 74. In the case of Robertson *v.* Parks, it was said: "The damage done is the gist of the action, not the conspiracy. When the mischief contemplated is accomplished, the conspiracy becomes important, as it may affect the means and measure of redress. The party wronged may look beyond the actual participants in committing the injury, and join with them as defendants all who conspired to accomplish it; and the fact of conspiracy may aggravate the wrong; but the simple act of conspiracy does not furnish a substantive ground of action."

In *Mogul Steamship Co.* v. *Macgregor, Gow & Co.* (1892), *A. C.* 25, Lord Bramwell, speaking for the House of Lords of England, in taking note of the apparent inconsistency in the doctrine that a thing which is lawful if done by one may be unlawful if done by several, said: "I think there is an obvious answer, indeed two: one is that a man may encounter the acts of a single person, yet not be fairly matched against several; the other is that the act when done by an individual is wrong, though not punishable, because the law avoids the multiplicity of crimes: *De minimis not curat lex;* while if done by several it is sufficiently important to be treated as a crime." Lord Esher, as Master of the Rolls, in *Temperton* v. *Russell, supra,* interpreted that decision as enunciating the doctrine that, "if there is an agreement to take an unlawful course of action which amounts to a conspiracy, and that conspiracy causes damage to the plaintiff, an action will lie in respect of such conspiracy." It has been held that a conspiracy to ruin an actor by hisses, groans and similar means of expressing disapproval, during his performance, may be actionable, though the public have a right to express dis-

approval of an actor's performance. *Gregory* v. *Brunswick,* 6 *M. & G.* 205, 953. The *ratio decidendi* of this case is that the wrong consisted in the combination to do it unfairly and of malice. From the conspiracy may be drawn the inference of a malicious intent to inflict injury, which would be impossible in the case of one acting without concert with others, for such act of disapproval of a performance in a public theatre is, *prima facie,* lawful. The combination implies the intentional causing of loss or damage without justifiable cause. While combination is not an essential element, it may serve to show the unlawful motive and purpose.

It follows that, in the particulars mentioned, the complaint states a valid cause of action. That being so, it is unnecessary to pass upon the sufficiency of the third count.

Now, as to the conclusion that the complaint is sham: We find it to be erroneous. Appellant is a duly licensed real estate brokerage concern. Its officers knew that the loan association desired to sell or lease (preferably the former), the theatrical property in question, and thus to rid itself of a continuing liability. Through appellant's efforts, Levin, the eventual purchaser, became interested in the property as a purchaser or lessee, depending, apparently, upon the comparative attractiveness of the terms. It is clear that if, through appellant's efforts, a sale or lease of the premises to Levin, or anyone else, were effected, compensation at the customary rate would be paid to it by the loan association. In fact, such compensation was subsequently paid to the broker, who, through the connivance of the Flinks, so appellant maintains, pretended to have been instrumental in effecting the sale. As heretofore pointed out, the fact that there was then no formal contractual relationship between appellant and the loan association or Levin is immaterial. This is not a requisite of the right of action asserted. The proofs submitted by appellant tend to show facts and circumstances which, if accepted as true by the triers of the facts, will support an inference of a conspiracy by respondents to deprive appellant of the fruits of its labor—the profit that would accrue to it through the sale of the property to the purchaser

procured by it, were it not for the wrongful intervention of respondents. And that being so, the complaint is not sham, and was improperly struck out. Julius Flink was, unquestionably, the managing head of the loan association. He was its president and one of its directors, and, in addition, was vested with the powers of a conservator by those in authority. Respondent Carl Flink, his brother, was a real estate broker. Associated with him in this business were respondents Sperling and Mankoff. Appellant, realizing the danger of loss if he disclosed the identity of his customer, insisted upon and secured the assurance of Julius Flink that the disclosure would be "held in strictest confidence," and that he would not in any way be injured thereby. Clearly, it was seeking to protect itself against an unfair use of the information thus given—the very thing that occurred, according to its proofs. Following this disclosure, Levin submitted a proposal for the leasing of the theatre, which was finally rejected. It is conceded that during the progress of these negotiations, Carl Flink took part in the capacity of a real estate broker. And a most suspicious circumstance is that he concealed his connection with the transaction, and submitted the purchaser's offer in the name of respondents Sperling and Mankoff, who merely had the use of his office. The transaction, as presented on this *ex parte* motion, savors of sharp dealing. The proofs justify the inference that Julius Flink, disregarding his obligation to appellant, disclosed to his brother the identity of the prospective purchaser. And it is also fairly inferable that the motive was the payment of the commission to his brother, and thus to disadvantage appellant. The complaint charges that he shared in the commission of which appellant was deprived, and if such be the fact he had a pecuniary interest in the transaction. Either consideration evidences malice. The mere *ex parte* denial of this allegation is entitled, for manifest reasons, to little or no weight on a motion of this character. It may be that, when the proofs submitted by the parties are subjected to the tests prescribed by law, by the process of trial in the ordinary mode, the ultimate result will be favorable to respondents, but the issue of

fact must be determined by the tribunal in which that authority is vested. This is patently a case for a jury. The parties will then be required to submit to cross-examination, or subject their conduct to the inferences that may properly be drawn by a contrary course. And it will be for the jury to determine the inferences warranted by the established facts. Compare *State* v. *Greenburg*, 105 *N. J. L.* 383; *Plimpton* v. *Friedberg*, 110 *Id.* 427; *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.*, 111 *Id.* 487.

The falsity of the pleading must be apparent. The power to strike out a pleading as frivolous, sham, or false, will not be exercised, unless it appears to be clearly, palpably so. It is a power that has always been cautiously exercised. It was not the province of the court below, on this motion, to determine the veracity of the respective parties. That was a question of fact to be determined by a jury. The duty of the court, on a motion to strike out a pleading as sham, is to determine whether an issue of fact is presented, and not to try the issue. If an issue of fact is exhibited, the parties tendering it cannot be deprived of the benefit of a trial in the ordinary mode. The court will not try the case on affidavits. It is only where the matters set up in the affidavits submitted on the part of the defendant, on a motion such as this, are not controverted, and demonstrate that the cause of action pleaded is a sham, and is without factual support, that the court is justified in granting the motion. *Solomon* v. *Salins*, 108 *N. J. L.* 214; 157 *Atl. Rep.* 383; *Jaeger* v. *Naef*, 112 *N. J. L.* 417; 171 *Atl. Rep.* 166; *Torricelli* v. *Sebastini*, 112 *N. J. L.* 458. A contrary rule would work a deprivation of the constitutional right of trial by jury.

Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 15.