GOTTLIEB HOCKENJOS, PLAINTIFF, v. FEDERAL DEPOSIT INSURANCE CORPORATION, DEFENDANT.

Decided May 20, 1938.

For the plaintiff, *Harold Simandl*.

For the defendant, *Andrew F. Zazzali*.

SMITH, JOSEPH L., C. C. J.   This comes on a motion to strike the complaint as frivolous.   According to the complaint, The Livingston State Bank, a banking corporation, was operating as such until December 16th, 1935, its deposits being insured by the defendant company under the Federal Banking act of 1935.   The complaint further pleads that the plaintiff was a customer of the bank and maintained a commercial and checking account; that he was indebted to the bank in the sum of $5,000, and as collateral security therefor assigned and pledged with the bank a certain lease he had, by the terms of which the lessee was instructed and required to pay the monthly rentals directly to the bank for and on behalf of the plaintiff, the bank agreeing to credit the amounts on account of the obligation until the said obligation was paid.   It is further pleaded that the bank collected under the said lease, from the lessee, a greater amount than necessary for payment of the obligation.   The complaint pleads that this excess was received by the bank in the usual course of its business for the account of the plaintiff.   The bank having failed to make proper entries and to give the proper credit to

the plaintiff for such excess, the plaintiff sued the bank, after insolvency, and recovered a judgment of $1,231.27, which is now sought to be recovered from the defendant corporation as insuror.

It should be noted *in limine,* that it is a well settled rule that the power to strike a pleading as sham, frivolous or false, will not be exercised unless it clearly and palpably appears to be so. The cautious exercise of such power is imperative. *Louis Kamm, Inc.,* v. *Flink,* 113 *N. J. L.* 582; 175 *Atl. Rep.* 62; *Barnes* v. *P. & D. Manufacturing Co., Inc.,* 117 *N. J. L.* 156; 187 *Atl. Rep.* 186; and it is also well settled that a pleading attacked as frivolous is assumed to be true in fact as to all matters properly pleaded. *Milberg* v. *Keuthe,* 98 *N. J. L.* 779; 121 *Atl. Rep.* 713; therefore, in deciding the legal soundness of the complaint before the court, the court must assume the above stated facts as admitted.

The final question to be determined by the court is: do the facts as pleaded in the complaint bring this claim under the insurance provisions of the Banking act of 1935, and that question depends upon the interpretation of the word "deposit" as used in the said act. According to the said act:

"The term 'deposit' means the unpaid balance of money or its equivalent received by a bank in the usual course of business and for which it has given or is obligated to give credit to a commercial, checking, savings, time or thrift account, or which is evidenced by its certificate of deposit, and trust funds held by such bank whether retained or deposited in another bank, together with such other obligations of a bank as the board of directors shall find and shall prescribe by its regulations to be deposit liabilities by general usage:  *  *  *."

It should be borne in mind that the Banking act of 1935 is a remedial act and its purpose is to inspire confidence in banks by safeguarding, to the limit therein designated, namely: $5,000, the credits of those dealing with banks covered by such insurance. As stated in *Weir* v. *United States,* 92 *Fed. Rep.* (2d) 634 (at *p.* 636):

"Its obvious intent was, by insuring deposits, to prevent runs on banks by depositors, to preserve solvency of insured banks and thus to keep open the channels of trade and commercial exchange."

The act, therefore, must be interpreted broadly in order to carry out its purpose and intent and to maintain the confidence of those dealing with banks by extending to them the protection of the insurance, if such interpretation is reasonable.

The defendant argues at length that the trust that arose from the transaction hereinabove outlined was a constructive trust *ex maleficio,* and did not arise from a fiduciary relationship; and yet defendant admits in his brief that the bank was acting as an agent of the plaintiff in the collection of such rents, under the assignment of rents for collateral. If the relationship was that of principal and agent, it follows then that the trust which is implied, arises from a contractual relationship of principal and agent, that is: the implied trust is derived from the contractual relationship between the parties, and is not merely imposed upon the bank for some wrong it has done towards the property of a stranger. The defendant characterizes the implied trust as *ex maleficio,* in the sense that the constructive trust is imposed by law upon a wrongdoer in order to provide a remedy to the injured party. Such a distinction might have been relevant if the plaintiff were a stranger to the bank, and its rights or remedies arose by the misconduct of the bank towards some property right of the plaintiff, but that is not the situation here. The obligation of the bank arose in the usual course of its business in collecting, as the agent of the plaintiff, upon the assigned lease, albeit it failed to enter such excess collections properly on its books.

The court will take judicial notice that banks receive commercial papers and other collateral for collection during the usual course of business. *Birmingham First National Bank* v. *Newport First National Bank* (*Ala.*), *22 So. Rep.* 976. The distinction made by the defendant between implied trusts and express trusts therefore becomes immaterial in the present

case, because if the complaint in the present case presents a trust, be it called implied or express, it arises from and out of the contractual relationship in the due course of the business of the bank and is not one imposed upon the bank as a penalty, in order to provide a remedy.

The general purpose of the Banking act of 1935 being to offer to one trading with a bank a sense of security concerning any moneys he entrusts to the bank either directly by his own hands, for his own account, or through a third party, for and on his behalf to be credited to his account, it is clear that the plaintiff in the present case comes within the class of persons intended to be protected by the insurance provided by the said act. It is no excuse to say that the officers of the bank did not properly show the credits upon their books or that they had embezzled the funds in question, or that the account did not appear on the books of the bank so as to provide a basis upon which deposit insurance premiums were computed. It is enough to say that it was the duty of the bank to account for the excess collection, and the failure of the bank to make proper bookkeeping entries may equally be present and applicable in the case of normal deposits in a thrift or savings account. As stated in *Weir* v. *United States*, 92 *Fed. Rep.* (*2d*) 634, *supra*, the wrongdoing of the officers of the insured bank is to the loss of the insurance corporation and not to the loss of the customer.

The conclusion, therefore, is that whether the transaction be viewed as a deposit or as a trust, a proper cause of action is pleaded by the facts set forth in the complaint, and the motion to strike the complaint will be denied.