Harry FRIEND, Doing Business as Hertz Driv-Ur-Self System, Licensee, Appellant,

v.

Frederick B. LEE, Administrator, Civil Aeronautics Administration, et al., Appellees.

No. 12435.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 16, 1954.

Decided March 17, 1955.

Messrs. F. Joseph Donohue and Abraham S. Goldstein, Washington, D. C., for appellant.

Mr. William F. Becker, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., Robert P. Boyle, General Counsel, Civil Aeronautics Administration, and Lewis Carroll, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellees.

Before FAHY, WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

Harry Friend, the Washington licensee of Hertz Driv-Ur-Self System, brought this action against the defendants Frederick B. Lee, Administrator of the Civil Aeronautics Administration, and Bennett H. Griffin, Director of the Washington National Airport, (1) to nullify in its entirety a contract granting an exclusive concession for drive-yourself car rental service to Warren E. Avis, or at least to abrogate it to the extent that it bars plaintiff from delivering driverless cars to incoming air passengers pursuant to reservations made elsewhere than at the Washington National Airport; (2) for a writ of mandamus to compel the defendants to relet the concession in accordance with the Public Advertising Statute, 41 U.S.C.A. § 5; and (3) for an injunction against interference by defendants with plaintiff's delivery of driverless cars to his customers at the Airport. On September 30, 1954, on defendants' motion the District Court dismissed the complaint on the ground that the plaintiff had no standing to sue. Plaintiff has appealed.

The material facts as they appear from the complaint and affidavits [1]

---

[1] We do not accept plaintiff's contention that this court may not consider the facts stated in the affidavits submitted by the parties in the court below. The record

filed in the suit may be summarized as follows:

Since 1949 the plaintiff-appellant has been supplying drive-yourself cars to air travelers arriving at the Washington National Airport, an activity which constitutes a substantial part of his business. Reservations for cars are received from Hertz agencies, travel agencies, and airlines in other cities, and are also requested directly from the plaintiff. After receipt of a reservation, a car is sent to the Airport, and the air carrier is requested to call the arriving passenger to the airline counter over the public address system. There the formalities for rental are completed [2] and the passenger is escorted to the parked car and is given the keys. The whole transaction takes no more than five minutes. Only three or four calls per day are made by airlines over the public address system at plaintiff's request. The plaintiff makes use of only the public spaces—the public lobby, parking spaces and roads. He does not solicit business at the Airport.

Prior to 1954 the concession for the rental of drive-yourself cars at Washington Airport was granted on a non-exclusive basis. In June, 1954, defendants requested bids for an exclusive Rent-A-Car concession for a three-year period. On June 7, 1954, plaintiff proposed that he be granted the concession for an annual payment of $31,500 plus 15½% of the gross revenue from the concession in excess of $200,000. Warren E. Avis also bid and was awarded the contract. Avis' contract provided that during the three-year term of the agreement the Government would not "permit any rental of driverless cars on the airport except by the Contractor." Space in the Airport lobby and parking space in the garage area were assigned to Avis pursuant to his contract.

On July 23, 1954, after the grant of the exclusive concession to Avis, defendant Griffin set forth in a letter to plaintiff the following terms, under which plaintiff would thereafter be permitted to deliver rental cars on Airport property. If customers have made a binding contract at some place other than Washington Airport or have made a reservation with plaintiff prior to arrival, the car may be delivered at the Airport. However, where only a reservation has been made, the customer must be taken off Airport property before the rental contract may be executed. Plaintiff's employees may not loiter or wait at the Airport except at a place designated by the Airport Director. At that place plaintiff may station an agent wearing the Hertz label on his cap for indentification by airline passengers. The paging of passengers over the public address system is not to be permitted, since the address system is operated only for the benefit of the Government and the airlines. It is not available for the use of any private party, including Avis.

On three separate occasions since this ruling defendants have arrested employees of the plaintiff for alleged violation of the rules governing conduct of business on Airport property.[3]

does not support his assertion that they were relevant only to the motion for a preliminary injunction, which is now moot and not before this court. Defendants' affidavit was expressly made part of their motion to dismiss. Plaintiff submitted two lengthy affidavits which went in their content far beyond the scope of the motion for preliminary injunction. Indeed, some of the facts relied on in plaintiff's brief in this court are taken from one of these affidavits. Plaintiff did not seek to present further materials in opposition to defendants' motion to dismiss and supporting affidavit. Cf. Sardo v. McGrath, 1952, 90 U.S.App.D.C. 195, 196 F.2d 20. It must therefore be assumed that the relevant facts are as outlined in the record made.

2. The passenger identifies himself and signs a paper containing a record of the rental terms which is in the nature of a rental contract or receipt for the automobile being delivered. If he has a Hertz courtesy card or an air travel card, he is not required to make any payment. If he has no credit card, he makes a deposit with the plaintiff's deliveryman.

3. See footnote 7, infra.

■■ *First.* Plaintiff contends that the contract between the defendants and Avis is illegal on the ground that it was entered into without previous advertising for proposals, as 41 U.S.C.A. § 5 requires. But assuming *arguendo* that the statute is applicable and may have been violated, plaintiff, nevertheless, has no standing to sue to invalidate the contract. Statutes regulating the contracting procedures of officers of the Federal Government are enacted solely for the benefit of the Government and confer no enforceable rights upon persons dealing with it. Perkins v. Lukens Steel Co., 1940, 310 U.S. 113, 126, 60 S.Ct. 869, 84 L.Ed. 1108. In consequence, plaintiff cannot contest the award of the contract to Avis, either as a bidder or in his capacity as a citizen generally. B. F. Cummins Co. v. Burleson, 1913, 40 App.D.C. 500; Champion Coated Paper Co. v. Joint Committee on Printing, 1917, 47 App.D.C. 141; Walter P. Villere Co. v. Blinn, 5 Cir., 1946, 156 F.2d 914; O'Brien v. Carney, D.C.D.Mass.1934, 6 F.Supp. 761; cf. Royal Sundries Corp. v. United States, D.C.E.D.N.Y.1953, 111 F. Supp. 136; Id., D.C.E.D.N.Y.1953, 112 F.Supp. 244.

■ Plaintiff further argues that the Avis contract is invalid because it is the result of tortious interference by defendants with the contract-making process. This claim is based on the allegations of the complaint that plaintiff was assured by the defendants that proposals need not be submitted in the form of sealed bids; that he was informed that his bid would be protected and kept in confidence; that the original bid of Avis

was lower than that of plaintiff; that sometime before the execution of the contract with Avis defendants informed Avis of the terms of plaintiff's bid for the exclusive concession; that Avis then met the terms of plaintiff's bid and defendants awarded him the contract; and that they did not give plaintiff an opportunity to meet or better the terms of Avis' revised bid. However, even if true, such facts do not give plaintiff the right to attack the Avis contract. Whether or not defendants breached their word to plaintiff, he had no fixed right to be awarded the contract as against Avis.[4] Contracting officers of the Federal Government have the duty to select the contract most advantageous to the Government, and advantage is not measured exclusively in terms of price; it includes other factors such as judgment, skill, ability, capacity and integrity. O'Brien v. Carney, D.C.D. Mass.1934, 6 F.Supp. 761, 762. The final selection of a contractor involves discretion and is not subject to review by the judicial branch of the Government. O'Brien v. Carney, supra, and cases there cited; Royal Sundries Corp. v. United States, D.C.E.D.N.Y.1953, 111 F.Supp. 136; Id., D.C.E.D.N.Y.1953, 112 F.Supp. 244. Since plaintiff has alleged no facts which tend to show that defendants have through conspiracy, fraud, malice or coercion abused their discretion in awarding the contract, Alabama Power Co. v. Ickes, 1938, 302 U.S. 464, 479, 58 S.Ct. 300, 82 L.Ed. 374, does not suggest a different conclusion, assuming *arguendo* that that case is applicable to situations like the present.[5]

4. Louis Kamm, Inc., v. Flink, 1934, 113 N.J.L. 582, 175 A. 62, 99 A.L.R. 1, relied on by plaintiff, did not involve the field of Government contracts and is not comparable on its facts. The decision is not helpful in disposing of the instant case.

5. Plaintiff seeks to strengthen his attack on the Avis contract by arguing that it contravenes the policy of the anti-trust laws. Plaintiff does not show how he is entitled to raise this issue, Alabama

Power Co. v. Ickes, supra, and the assertion hardly appears to us well-founded on the facts. Donovan v. Pennsylvania Co., 1905, 199 U.S. 279, 26 S.Ct. 91, 50 L.Ed. 192; Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 1928, 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681; Skaggs v. Kansas City Terminal R. Co., D.C.W.D.Mo. 1916, 233 F. 827; see, also, Miami Beach Airline Service v. Crandon, 1947, 159 Fla. 504, 32 So.2d 153, 172 A.L.R. 1425, and cases there cited.

*Second.* It remains to examine the second contention of plaintiff that the defendants are interpreting and applying the regulations adopted for the administration of the Airport in a capricious and arbitrary manner which prevents plaintiff from using the public facilities of the Airport, in ways which should be open to any citizen.

The defendant Lee as Administrator is authorized by Section 7–1302 of the D.C. Code (1951), to control the Airport, is made responsible for its care, operation, maintenance and protection, and is given the power to make such rules and regulations as he may deem necessary in the proper exercise of the foregoing responsibilities. He has issued a regulation which provides:

"No person shall engage in any business or commercial activity of any nature whatsoever on the airport except with the approval of the Administrator or Airport Director and under such terms and conditions as may be prescribed." 14 Code. Fed.Regs. § 570.84 (Rev.1952).

Relying on the regulation and on their statutory powers the defendants are seeking to force plaintiff to comply with the conditions set forth in their letter of July 23, 1954, summarized above, in delivering cars to incoming air passengers.

Prior to July, 1954, plaintiff used the publicly-accessible areas for the delivery of cars to arriving passengers, pursuant to reservations previously made, in the manner we have described. Defendants did not then consider that their regulations, which had been in effect for many years, prohibited or restricted the right of plaintiff so to deliver cars to customers. The three-year exclusive concession granted to Avis in July, 1954, does not in terms preclude plaintiff from delivering cars to customers who have made arrangements for such delivery prior to their arrival. And defendants even now are not seeking to ban all deliveries of cars at the Airport by plaintiff, pursuant to a prior reservation or contract. They are endeavoring to do so only where the delivery involves the execution of any document or receipt or the payment of a deposit. Where a paper is to be signed or money is to be paid, both passenger and plaintiff's employee must, under defendants' proposed conditions, leave the Airport property to effect delivery of the car. Such conditions plainly make it difficult, if not impossible, for plaintiff to effect delivery of cars without exposing both the passengers and plaintiff's employees to excessive and unreasonable inconvenience and delay. There is no showing that plaintiff's use of the public space at the Airport, either in the building or on the roadways and parking spaces, has unduly congested the premises or interfered with its proper administration.[6] The fact that plaintiff has delivered cars for a number of years prior to 1954 in the same way without the imposition of the restrictions now proposed indicates rather strongly, in the absence of some contrary proof, that the restrictions are not related to the proper administration of the Airport. We entertain the greatest doubt on the facts before us as to whether the acts performed by the plaintiff and his customers in effecting the delivery of the car constitute the "rental of driverless cars on the Airport" which defendants have obligated themselves toward Avis to prevent. Of course, whether this is so can only be resolved ultimately at a trial in the District Court.[7]

6. Plaintiff seeks to use the public address system—through the personnel of the airlines—for the paging of his own arriving customers. This on the average is said to occur only three or four times a day. The policy adopted by the Airport Director and the airlines for use of the loud speaker system states: "Paging of individual passengers by name shall be discouraged, and in any event shall be at the minimum possible." To what extent the defendants may be entitled to prevent use of the system by plaintiff is a question which need not be decided at this time, but should await a trial.

7. While the present case was pending in this court, one of plaintiff's drivers was brought to trial in the United States Dis-

We think that the plaintiff has made at least a prima facie showing that he is being subjected to unreasonable restrictions in the delivery of driverless cars to customers at the Airport, an activity which the defendants concede the plaintiff has the right to perform. Such conduct on the part of Government officials, if it actually has occurred, would be capricious and arbitrary. Where there is a threat of injury resulting from capricious or arbitrary performance of the regulatory functions of a Government agency, the Federal courts have in a wide variety of situations been ready to grant relief. Embassy Dairy v. Camalier, 1954, 93 U.S.App.D.C. 364, 211 F.2d 41; B. F. Goodrich Co. v. Federal Trade Commission, 1953, 93 U.S.App.D.C. 50, 208 F.2d 829; Patton v. Administrator of Civil Aeronautics, 9 Cir., 1954, 217 F.2d 395; cf. West Coast Exploration Co. v. McKay, 93 U.S.App.D.C. 307, 316–318, 213 F.2d 582, 591–592, certiorari denied, 1954, 347 U.S. 989, 74 S.Ct. 850, 98 L.Ed. 1123. The Patton case is particularly relevant because there the Administrator of the Fairbanks International Airport declined to permit the plaintiff, who ran tourist busses for prepaid tours, from picking up incoming members of such tours at the Airport, on the ground that an exclusive concession for taxicab service had been granted to another company. The Ninth Circuit held that the complaint, seeking injunctive and other relief against the Administrator, should not have been dismissed by the District Court.

We do not need to determine for the purposes of the instant case whether plaintiff has standing to sue under Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, as a person suffering a legal wrong, i. e., the arbitrary destruction of his business, or whether the court may proceed in the exercise of its general equitable powers. Suffice it to say, that where, as here, there is a prima facie showing of arbitrariness on the part of Government officials in regulatory action taken by them, sufficient to threaten substantial injury to the party affected, the injured party is entitled to be heard.

We continued in full force and effect until further order of this court the temporary restraining order of the District Court, forbidding defendants from interfering with plaintiff's business. We are issuing with this decision an order terminating the stay as of the tenth day after the issuance of the mandate of this court. We leave it to the District Court to determine whether or not a restraining order should be issued pending further proceedings in that court.

The District Court erred in dismissing plaintiff's complaint insofar as it seeks an injunction against arbitrary interference with the delivery of driverless cars by defendants. Accordingly, the decision of the District Court is

Reversed and the case remanded for proceedings not inconsistent with this opinion.

trict Court for the Eastern District of Virginia. See text connected to footnote 3, supra. On January 27, 1955, that court acquitted him on the ground that the delivery of cars in the manner outlined above did not amount to carrying on a business or commercial activity requiring approval of the Administrator or Airport Director within the intent of the regulation. 14 Code Fed.Regs. § 570.84 (Rev.1952); United States v. Jenkins (Criminal No. 3065), 130 F.Supp.

808 (E.D.Va.1955). At the present stage we need not, and do not, pass on the question discussed in the District Court's opinion in that case. Defendants undoubtedly possess broad powers in relation to automobile and personal traffic at the Airport, and to the use of space. The real issue here, which we find sufficiently raised by the complaint, is not so much the extent of defendants' authority in the abstract, but the reasonableness of its exercise in relation to the appellant.