Louis SZMODIS, individually and on be-
half of all other taxpayers similarly
situated and Pembroke, Inc.

v.

George ROMNEY, Secretary of the De-
partment of Housing and Urban Devel-
opment; Bethlehem Housing Author-
ity; Ralph J. Bartholomew, Secretary
and Executive Director of said Author-
ity; and C. N. Zumas and M. N. Zumas
t/a C & M Zumas Co.

Civ. A. No. 69–1929.

United States District Court
E. D. Pennsylvania.

Nov. 3, 1969.

Francis X. Nolan, Bethlehem, Pa., for plaintiffs.

Louis C. Bechtle, U. S. Atty., for defendant Romney.

Milton Riskin, Bethlehem, Pa., for defendant Bethlehem Housing Authority.

Robert H. Holland, Bethlehem, Pa., for defendants Zumas.

OPINION

LUONGO, District Judge.

This matter is before the court on motion for preliminary injunction. Plaintiffs, Louis Szmodis and Pembroke, Inc., seek to enjoin the Secretary of the Department of Housing and Urban Development (HUD), the Bethlehem Housing Authority (BHA), and C. M. Zumas and M. N. Zumas trading as C & M Zumas (Zumas) from proceeding with meetings and negotiations looking to the award of a contract for the construction of two housing projects for the elderly in Bethlehem, Pennsylvania.

Prior to commencement of the hearing on the motion for preliminary injunction, the Secretary of HUD moved to dismiss the complaint on the grounds, inter alia, that plaintiffs lack standing to sue and that plaintiffs failed to state a claim upon which relief can be granted. The motion was taken under advisement, the hearing was held and evidence was received.

The motion to dismiss for lack of standing will be granted. I have also concluded that plaintiffs have failed to state a claim upon which relief can be granted, but since, to arrive at that conclusion, I have considered evidence presented at the hearing on the motion for preliminary injunction, I will treat the motion to dismiss for failure to state a claim as a motion for judgment under Rule 56. See Rule 12(b) F.R.Civ.P.

The facts out of which this controversy arises are the following:

On March 28, 1969 defendant Bethlehem Housing Authority (BHA) invited private developers to bid on two turnkey projects [1] for the construction of

---

1. A "turnkey" project is one in which a developer submits a proposal to build a public housing facility on a site owned or obtainable by him to a local housing authority and to HUD. If the two agencies agree, a contract will be negotiated requiring the local housing authority to purchase the completed facility from the developer.

low-rent housing units for the elderly. One of the units was to be constructed in that portion of the City of Bethlehem situate in Northampton County and the other was to be constructed in that portion of the City of Bethlehem situate in Lehigh County. Proposals were submitted by a number of developers. Plaintiffs and defendant Zumas submitted bids with site locations in each county. At a regular meeting of the BHA on March 31–April 1, 1969, the BHA selected as its first choice for the Northampton County unit, the site proposed by plaintiffs; second choice was the Elm Street site of Zumas. BHA's first choice for the Lehigh County unit was the Leibert Street site proposed by Zumas and the alternate choice was a site submitted by plaintiffs. These recommendations were forwarded to the Regional Office of HUD in Philadelphia.

On April 22, 1969 the four sites recommended by the BHA were inspected by Thomas Anderson, a representative of HUD, and Ralph Bartholomew and Henry Bodder, members of the BHA. After inspecting the four sites Anderson, Bartholomew and Bodder agreed that the two Zumas sites were the more desirable. On June 6, 1969, HUD transmitted a letter to the BHA "concurring" in the selection of the two Zumas sites. At a regular meeting on June 9, 1969, the BHA, by a vote of four-to-one, approved the selection of the two Zumas sites. One member challenged the validity of this vote apparently because he believed that HUD had either misinterpreted the BHA's earlier recom-

mendations from the March 31–April 1 meeting or that HUD was making the initial selection of sites in contravention of what this member believed to be the requirements of the "Low-Rent Housing Manual." [2] Thereafter, a meeting was held with HUD officials on July 1, 1969 at which the alleged procedural improprieties were discussed. On July 7, 1969 at a special meeting, the BHA rejected, by a three-to-two vote, a motion to rescind the action taken on June 9, 1969. The BHA, HUD and Zumas are presently engaged in the step-by-step process [3] outlined in HUD Regulations for reaching a final agreement for the construction of these turnkey projects. At this point, plaintiffs have been excluded from further negotiations with the two administrative agencies and plaintiffs seek to enjoin defendants from proceeding with their negotiations.

### I. *Plaintiffs' Standing as Taxpayers.*

 The Secretary's motion to dismiss contests plaintiffs' standing to maintain this suit. Plaintiffs contend that they have standing under the Supreme Court's recent decision in Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

Specifically, plaintiffs have alleged that the methods and procedures used by BHA and HUD in selecting sites and proposals for these turnkey projects violated HUD regulations [4] and thereby arbitrarily excluded plaintiffs from consideration for the award of the contracts on these projects. Plaintiffs argue that

---

2. Regulation 221.1(4e) contains a provision requiring the local housing authority to notify the developer of his selection by letter and states, "the developer so selected shall have been the one that has been selected by the [local housing authority] and approved by [HUD]."

3. As set forth in HUD Regulation 221.1 (1c), these steps are: (1) advertisement by Local Housing Authority [LHA] for proposals; (2) evaluation of proposals; (3) appraisal of site; (4) feasibility conferences; (5) submission of preliminary drawings and specifications; (6) evalua-

tion of cost estimates by HUD and the LHA; (7) negotiation conferences; (8) preparation of the LHA Development Program; (9) execution of contributions contract between the LHA and HUD; (10) preparation of working drawings and approval by HUD and the LHA; (11) submission of updated cost estimates; (12) execution of the contract for sale between developer and the LHA. Plaintiffs' Exhibit #2.

4. Regulations 205.1(2c) and 221.1(4e), discussed *infra.*

their "right to work" which they claim is protected under the Due Process Clauses of the Fifth and Fourteenth Amendments, and their right to equal protection of the law under the Fifth and Fourteenth Amendments, have been infringed and that they and all other effected taxpayers will be subjected to increased tax liabilities as a result.

To establish standing under the *Flast* decision a taxpayer must show a logical nexus between the status asserted as a taxpayer and the claim sought to be adjudicated so that the complaint will be presented in the adversary context required by Article III of the Constitution. To challenge the constitutionality of an exercise of congressional power under the taxing and spending clause,[5] a taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the taxing and spending power. It is not sufficient to allege "an incidental expenditure of tax funds in the administration of an essentially regulatory statute * * *" since this is not a challenge to the enactment itself. Further, an allegation that one is deprived of property without due process of law because of an increase in tax liability does not charge the type of "specific constitutional limitation" which creates standing for a taxpayer to challenge a congressional enactment. Flast v. Cohen, *supra.*

Plaintiffs here do not challenge the constitutionality of a legislative enactment under the taxing and spending clause of the Constitution, rather they attack an incidental expense in the administration of a statute. Their attack does not focus on the violation of constitutional rights of taxpayers generally, that is, on "specific constitutional limitations" on congressional taxing and spending power, but only on a specific infringement of plaintiffs' alleged con-

stitutional right to be awarded a contract. Plaintiffs seek standing as taxpayers but in reality their status is that of unsuccessful bidders who are, coincidentally, taxpayers. As such, they have no standing to sue on the alleged constitutional grounds.[6] Friend v. Lee, 95 U.S.App.D.C. 224, 221 F.2d 96 (1955); Contel Constr. Corp. v. Parker, 261 F.Supp. 428 (E.D.Pa.1966).

## II. *Plaintiffs' Failure to Set Forth a Valid Claim.*

■ The Secretary's motion to dismiss also raises the question whether the complaint sets forth a claim upon which relief can be granted. Plaintiffs have attempted to state a valid claim under 28 U.S.C. § 1361 which provides as follows:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States to perform a duty owed to the plaintiffs."

Mandamus proceedings against government officials lie only with respect to performance or non-performance by those officials of non-discretionary acts. If the action or inaction complained of by a plaintiff is within the discretion of government officials or agencies, there is no "duty owed" to the plaintiff, and hence the court lacks the power to grant the requested relief. *See, e. g.,* Smith v. United States Air Force, 280 F.Supp. 478, 479 (E.D.Pa.1968); Hill v. United States Board of Parole, 257 F.Supp. 129, 130 (M.D.Pa.1966); Armstrong v. United States, 233 F.Supp. 188, 190 (S.D.Cal.1964), aff'd 354 F.2d 648 (9th Cir. 1965), cert. denied, 384 U.S. 946, 86 S.Ct. 1472, 16 L.Ed.2d 543 (1966); Parrott v. Cary, 234 F.Supp. 572, 574 (D.C.Colo.1964).

In the present case, plaintiffs contend that HUD and the BHA owed a duty to

---

5. U.S.Const. Art. 1, § 8.

6. Although plaintiffs failed to raise the point, I should note that I am satisfied that plaintiffs are not "persons aggrieved"

by the actions of an administrative agency as those terms are used in 5 U.S.C. § 702, and hence plaintiffs also lack standing under the Administrative Procedure Act (5 U.S.C. § 701 et seq.)

plaintiffs to apply applicable statutory and regulatory provisions equally and fairly, and not arbitrarily, in the selection of sites for these turnkey projects, and that the Secretary of HUD has failed in this duty by (a) selecting a site in Lehigh County (the Leibert Street site) which has a surface slope in excess of ten percent in violation of HUD Regulation 205.1(2c),[7] and (b) using improper procedures in the method of selecting sites in violation of HUD Regulation 221.1(4e).[8]

### (a) Excessive grade.

■ Plaintiffs' first contention is that Regulation 205.1(2c) absolutely forbids the selection, for a housing project for the elderly, of a site which has an undeveloped surface grade in excess of ten percent. This interpretation is too constrictive. Regulation 205.1 (2c) provides as follows:

"*Physical Characteristics.* No site shall be selected where topography or subsurface conditions prevent economical and well planned development and operation of the project.

(1) Sites with dominant grades in excess of 10 percent involve high cost development and management. Where possible such sites should be avoided and those with more moderate grades selected. Conversely, low-lying and flat sites should not be chosen unless practical, expedient, and economic means of surface drainage can be arranged for expected heavy rainfall. Where topography is such that feasible use of the site is subject to serious question, the HAO will require that the Local Authority have its Architect prepare a site feasibility study which will clearly demonstrate that the site in question can be utilized in an economic and satisfactory manner for the development of proposed facilities. Such studies should contain existing topography, proposed grades, cross sections, building outlines, elevations and locations, street and parking layouts, or any other information which the HAO representatives may require before recommending approval of any specific site."

The purpose of the Regulation is clearly to avoid selecting sites whose topography is such as to make development and use for housing for the elderly economically unfeasible. The wording that sites with grades in excess of ten percent should be avoided "where possible" and the provision for a feasibility study where economical development of the site is "subject to serious question"[9] indicate to me that, although precautions are to be taken to ascertain whether sites with slopes in excess of ten percent can be developed feasibly, the Regulation does not prohibit the use of such sites. Grade and cost of development of sites are only two of the several criteria to be considered. For example, Regulation 205.1(b11) provides that consideration be given to (1) availability of retail outlets; (2) availability of public transportation; (3) the nature of the terrain; (4) recreation facilities; and (5) activity in the neighborhood. Regulation 205.1(a) and (b) list other general considerations, e. g., proximity to nuisances such as open sewage, smog, airports, railroads, etc.

Regulation 205.1(2c) therefore, merely outlines one of a number of factors which HUD and developers must consider in selecting sites. The weight to be given each of the criteria is clearly

7. "Low-Rent Housing Manual," Zumas' Exhibit No. 4; Plaintiffs' Exhibit No. 4.

8. "Low-Rent Housing Manual," Plaintiffs' Exhibit No. 2.

9. At the time of the hearing such a feasibility study, the fourth step of the twelve in the contract award procedure, was underway. As part of the feasibility study, the developer submitted plans showing the changes of grade in the improved site, with zero grade at each of the pertinent points for pedestrian movement. See Zumas' Exhibit #3; N.T. pp. 47, 62.

a task for the expertise of the administrative agency, not the courts. There is no mandatory proscription in the Regulation against use of sites with grades in excess of ten percent. Whether such a site may be developed feasibly clearly calls for the exercise of judgment and discretion by HUD officials and for that reason this court lacks the power to act under 28 U.S.C. § 1361. See Smith v. United States Air Force, *supra.*

(b) *Selection procedure.*

■ It is contended that the site selection was improper because the BHA failed to make the initial independent selection of the sites for the projects. Plaintiffs argue that the agreement by HUD's Anderson and the BHA's Bartholomew and Bodder on April 22, 1969 as to choice of sites, coupled with HUD's letter of June 6, 1969, constituted a selection by HUD and approval by the BHA, the reverse of the order they claim is required by Regulation 221.1(4e).

Assuming *arguendo* that plaintiffs' interpretation of this Regulation is correct, whatever defect there may have been in the procedure with respect to the selection announced by the BHA on June 9, 1969, the defect was remedied by the BHA's later ratification of the selection at the special meeting on July 7, 1969.

Furthermore, plaintiffs' interpretation of Regulation 221.1(4e) regarding the procedures in site selection is open to serious question. In line with the statutory guidelines, the principal objective of the Regulation appears to be to foster cooperation between the local housing authority and HUD by requiring approval of project sites by both. See 42 U.S.C. § 3531 et seq.; and "Low-Rent Housing Manual," Plaintiffs' Exhibit #2. In this case the objective has been accomplished after thorough inspections of the potential project sites by representatives of HUD and BHA. I see nothing in the statute or regulations which absolutely mandates the local housing authority to make the initial selection. That being so, there is no basis whatsoever for compelling BHA and HUD to start all over in order to arrive again at the goal of selecting what both have agreed are the most desirable sites and proposals to pursue.

In summary, plaintiffs have sought by these proceedings to have this court independently evaluate the relative merits and demerits of the several sites and proposals and, on the basis of such evaluation, to conclude that plaintiffs' proposals are better and to enjoin defendants from proceeding further with the Zumas proposals. These are matters which have been committed by Congress to the judgment and discretion of HUD and are matters peculiarly within the competence of that administrative agency. This court has neither the competence nor the inclination to substitute its judgment for that of the agency.

The foregoing opinion will constitute the court's findings of fact and conclusions of law required by Rule 52(a).

### ORDER

And now, this 3rd day of November, 1969, it is ordered that the Motion of defendant George Romney, Secretary of the Department of Housing and Urban Development, to Dismiss for lack of plaintiffs' standing to sue be and it is hereby granted;

It is further ordered that the said Secretary's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, considered as a Motion for Judgment, be and it is hereby granted.